McBRIDE, Judge.
On June 12, 1953, there was a physical encounter between Millet, the plaintiff, and Cole, one of the defendants. Millet, alleging that Cole without provocation struck him in the face with his fist, brings this suit seeking to recover from Cole $50,000 for pain and suffering, embarrassment and humiliation, lost wages, and medical expenses. It is alleged in the petition that Cole was the employee of B & B Exterminating Company, Inc., and that in committing the assault upon plaintiff, he was acting as agent of said corporation, and the corporation is also sought to be held liable on the doctrine of respondeat superior.
The answer admits that Cole struck Millet but denies that there was no provocation; it is charged that plaintiff initiated the difficulty by using abusive language toward Cole and then without warning attempted to strike Cole and that Cole struck Millet only in self-defense. , .
After a trial below on the merits of the case, plaintiff’s suit was dismissed and he has appealed from the judgment.
Besides himself, plaintiff’s witnesses were his wife, mother-in-law and stepson. The defense witnesses were employees of B & B Exterminating Company, Inc.; it is at once obvious that none of those ap-. pearing can be classified as “disinterested” witnesses. Despite much conflicting and contradictory testimony, it is clear that the affray between the two men was the culmination of a long-standing disagreement over parking rights and privileges. Both Millet and B & B Exterminating Company, Inc., were the lessees of certain buildings located at 3133 Jefferson Highway and the yard was used in common for the parking of vehicles. The corporation, for business purposes, leased and occupied a building fronting on the highway. Millet resided in an apartment in a building directly to the rear of the building occupied by the corporation.
At approximately 5 o’clock p. m. on the day in question Millet, 'after returning from work, parked his'jeep near his apartment and then went into his home to partake of thé evening meal. Shortly thereafter two trucks of the B & B Exterminating Company, Inc., were parked by'their drivers in close ‘ proximity to Millet’s vehicle. Millet, upon noticing that the trucks “blocked” his jeep, left his apartment and entered the jeep and drove it toward the building of the B & B Exterminating Company, Inc., and parked it near the loading platform, which had the effect of preventing the employees of the corporation from making use of the platform for unloading articles from the corporation’s vehicles. Millet admits he took this step by way of retaliation for the parking of the two trucks in such a way they “blocked” his jeep.
Millet tells the story thus:
“Well, I came home and parked my car; and just as I parked the car and got out of it right by the window which is shown in that picture right there — I parked the car and I went inside and I was about ready to start to eat supper — my wife was preparing supper. Just about that time two (2) B. & B. Exterminating 'Company vehicles — one was a yellow truck and the other one was a car — got right up alongside of the fence where I could not back out if I had to go out. So what I did, I wiggled it out back and forth and parked' it ' right to the rear and— * * * I wiggled it out until I got it *411 to the back of the B. & B. Exterminating Company, and I blocked his driveway. * * * ”
After Millet had positioned his jeep near the platform, he stated to a colored man he would not move the jeep until the trucks were taken away from the vicinity of his apartment. Millet claims' the colored man thereupon moved the trucks and that he in turn drove the jeep away from the platform back to its original position near the apartment. Soon afterward Millet and Cole engaged in conversation, then in heated argument, and then blows were struck.
There is some question as to just where the two were standing. Plaintiff and his three witnesses testified that the affair took place near the front of the jeep; this is denied by the defense witnesses, and Cole’s story is that the Millet jeep was still parked alongside the platform and this was his reason for proceeding to Millet’s apartment, to ask him to move the jeep.
Another controverted point is who was present. Mrs. Millet first said no one else was there except her husband, Cole, and herself. She later said that her mother, Mrs. Guidry, and her eleven-year-old son, Marlow Watts, also were witnesses. Mrs. Guidry testified that besides Mrs. Millet and the participants “there was no one anywhere around, because I looked.”
We do not think .that the statements made by the two ladies are .correct for the reason that the eleven-year-old stepson of Millet was present in the yard as well as the several employees of the B & B Exterminating Company, Inc., who appeared as witnesses.
The next question is: Who was the aggressor? Millet denies any attempt to strike Cole; his wife 'and his mother-in-law also deny that Millet attempted the first blow, while the boy, after stating that he did not know whether Millet endeavored to hit the other man, later said that Millet made no such attempt. The defense witnesses dispute what Millet and his witnesses had to say. Cole states that when .he met Millet in the yard he told Millet . that “he was impossible to get along with” and Millet made the reply: “I will show ■you how impossible I am” and then “threw a punch at me — took a swing at me.” Cole admits he then struck Millet, but “how many times I hit him I don’t know.” Holmes.and Shepard, salesmen for B & B Exterminating .Company, Inc., testified positively that .the first indication there would be fisticuffs came when Millet struck Cole; Shepard says the blow was a glancing one to Cole’s face.
Also in irreconcilable conflict is the testimony regarding the number of times'that Cole struck Millet. Mrs. Guidry states she saw the affair from beginning to end; she was standing on the porch with Mrs. Millet;' her testimony is:
“Then I saw them both talking, and all at once I saw Mr. Cole hit Mr. Millet — he hit him one blow; one blow he hit Mr. Millet.”
Mrs. Millet stated:
“He had his fist closed and was just punching straight out with one hand and hit my husband three (3) times in the face.”
According to the boy’s testimony, Cole
“ * * * started swinging. My daddy never .had any chance to hit him; and when my daddy turned around, he kept hitting him on the back.
“Q. Who hit who? A. This other man hit my daddy.”
Millet’s testimony seems to indicate his belief that he received three blows from Cole for he states:
“L.cjidn’t see, anything. In fact, I didn’t even, feel the other two licks they claim I got. I felt one and that was- all.”
Shepard testified that “there were probably several punches thrown.”
Thus is the state of the testimony. The judge below evidently believed there *412 was provocation for Cole’s actions in striking Millet and after a careful consideration of the record as a whole, our opinion is that no manifest error appears in the judgment. The trial judge saw and heard the witnesses testify, heard their conflicting statements, observed their demeanor, and detected, perhaps, hesitancy or bias, and his opportunity for doing so placed him in the superior position to weigh the testimony and evaluate veracity. If we cpuld be convinced that Millet had moved his jeep from the vicinity of the platform before the affray took place, we would hesitate to believe that he was the aggressor. We would then ask ourselves why Millet would endeavor to strike Cole when the three vehicles had been moved and the matter had ended and no one had further cause to complain.
Our appreciation of the matter coincides with what evidently was the conclusion of the trial judge and that is that Millet’s jeep still remained by the platform and Cole went to see him about it, whereupon a heated argument took place and both being in a belligerent mood traded punches, Millet striking the first blow.
At any rate, although the fact plays no importance here, after the fight Millet rushed into his home and secured a shotgun whereupon all witnesses made a hasty departure from the scene and sought whatever protective cover was possible.
A person at fault in provoking difficulty cannot recover damages resulting therefrom, notwithstanding that the person who inflicted the injuries was not fully justified in law in doing so; whether a plaintiff is to be precluded from recovering damages as the result of his having provoked the assault depends on the peculiar facts of the case. Betz v. Teche Lines, Inc., La.App., 7 So.2d 656; Sheppard v. Causey, La.App., 8 So.2d 86.
Therefore, the judgment appealed from is affirmed.
Affirmed.