SAMUEL, Judge.
This is a suit for the recovery of damages for personal injuries sustained by the plaintiff as a result of a battery by the defendant. Defendant reconvened on a promissory note and for damages resulting from faulty and unworkmanlike performance by plaintiff of a plumbing contract between the parties. The trial court rendered judgment in favor of plaintiff for $19,532.21, subject to a credit of $3,437.42 resulting from a judgment in favor of defendant on his reconven-tional demand. Defendant has appealed.
The testimony is conflicting, but from our reading of the testimony and evidence adduced during the trial we find the following facts:
The litigants had entered into a contract separate and apart from the general building contract whereby, for a consideration of $12,750.00, plaintiff was to install all plumbing required for an addition of 22 units to a motel owned and operated by the defendant. The plumbing work performed was most unsatisfactory. There were ninety leaks in the plumbing system, which leaks appeared in all but two or three of the bath rooms in the 22 units and necessitated the cutting away of sheet rock so that pipes could be repaired; lavatories were improperly hung and came loose; inspections were not timely obtained; sewer line connections were not made although plaintiff had informed tlie general contractor that they had been, resulting in the pouring of concrete which later had to be torn up to make the proper connections; a water line was omitted, compelling the general contractor to tear out a wall for its installation; bath room overflow washers were improperly installed; water heater thermostat wires were installed with improper staples and were shorted by staples being driven into them; water lines were too tightly strapped; solder was allowed to enter a pump; a gas line was not cemented; and gutter cans were damaged. The quality of the the work was described by the general contractor as the worst he had ever seen.
On June 5, 1958 plaintiff and three of his helpers returned to the motel to repair another leak in one of the bath rooms. After completing the repair they were informed by defendant’s wife of an apparent leak over the ceiling above a clothes closet in the same room. They removed the sheet rock from the ceiling in order to expose the pipes and, believing that the water had been turned off in connection with fixing the first leak, cut a water line which turned out to a hot water line. The one which had been turned off was a cold water line. Under pressure from the pump in the circulating system the water poured into the room.
Plaintiff tried to staunch the flow by wrapping the pipe with towels while he sent one of his helpers to turn off the hot water. The helper found the boiler room locked and, returning to the room, informed plaintiff of that fact. He was told to go to the motel office to get a key. Upon reaching the office he told defendant and his wife of the situation and they immediately went to the boiler room where the hot water finally was turned off. They then left the boiler room and went to the room in which the work was being done. The room was flooded. Water covered the new wall-to-wall carpeting and was flowing through the doorway to the sidewalk. The furniture and television set were wet and the partially torn out ceiling completed what must have been a very disturbing scene.
Defendant was upset. He demanded an explanation and wanted to know who was going to pay for the damages. Plaintiff answered that he would but the defendant insisted on further explanation in view of the fact that the plaintiff already owed him more than $2,000.00 on a note which had not been paid.
The testimony as to what happened thereafter is in almost hopeless conflict. Plaintiff and his witnesses testified that while he *453 was on the first or second rung of the ladder defendant struck him in the face, knocking him to a nearby bed where the defendant continued to punch and beat him. Defendant’s version is that plaintiff advanced upon the defendant, blows were exchanged, and both parties fell on top of the bed. It seems unlikely that the plaintiff could have fallen from the ladder to the bed in view of the fact that the ladder must have been in the closet. But we are satisfied that the first blow was struck by the defendant, punches were exchanged, and the struggle continued with both men on the bed,, the defendant on top. We are also satisfied that the encounter came to an end when one of the helpers advanced on the defendant with a wrench and the defendant disengaged himself and ran the helper from the property.
Defendant contends that there is no liability whatsoever on his part. Alternatively he attacks some of the awards to plaintiff as being excessive and others as not having been proved. He also contends he should be awarded damages additional to those included in the judgment in his favor on the reconventional demand.
While plaintiff has neither appealed nor answered the defendant’s appeal, he asks that the amount of the judgment in his favor on the main demand be increased, citing as authority for such an action by us, in the face of an absence of an answer to an appeal as required by LSA-C.C.P. Art. 2133, official revision comment (c) of LSA-C.C.P. Art. 2164. We find it unnecessary to consider the question of whether or not we have the authority to increase a trial court award, in favor of an appellee, in the absence of an answer to an appeal, for the reason that, in connection with our examination of the record as a result of defendant’s complaints, we find all awards in favor of the plaintiff either adequate or excessive.
Defendant’s first contention as to the absence of liability on his part is based upon the argument that the plaintiff’s actions in failing to properly discharge his obligations under his contract with the defendant and in making the repair at the time the encounter occurred were of such a nature as to actually provoke the incident and preclude the recovery of any amount. We do not agree.
 While it is true that a recovery of damages resulting from a battery cannot be obtained by a plaintiff who provokes the battery even though the defendant’s conduct may not have been justified in law, each case being dependent upon its own particular facts (see Haydel v. Bullinger, La.App., 128 So.2d 441; Millet v. B. & B. Exterminating Company, La.App., 79 So.2d 409) no case has been called to our attention, and we know of none, holding that under circumstances similar to those involved here the conduct of the plaintiff was considered sufficient provocation to justify a battery. We can and do understand that the defendant was disturbed and upset but we cannot accept this as a justifiable excuse for punching and beating the plaintiff. Defendant is liable for the damages occasioned by his conduct.
The trial court judgment awarded plaintiff a total of $19,532.21, itemized as follows: medical fees, $1,240.00; x-rays, hospital charges, $292.21; personal injuries, loss of teeth, bruises, contusions and lacerations, $12,000.00; pain and suffering, future pain and suffering and loss of earning capacity, $6,000.00.
Defendant complains of two medical charges which the judgment condemns him to pay: a charge by Dr. Harry Zoller in the amount of $65.00 which he argues should be disallowed and one by Dr. Marion A. LaNasa in the amuont of $800.00 which he claims is excessive in the cost of certain dentures, and, in part, not attributable to the battery.
Defendant is correct in arguing that Dr. Zoller did not actually treat plaintiff for the injuries he sustained in the incident involved here. Dr. Zoller did treat plaintiff only in connection with other matters unrelated to the incident. But Dr. Zoller saw *454 and examined plaintiff six days after the injury, checked x-rays and referred him to a dentist. His bill for $65.00 was for consultation and examination and was occasioned by the injuries received in the altercation, Defendant is liable therefor.
Dr. LaNasa was the dentist who treated plaintiff. He rendered a bill for $800.00, $250.00 of which was for a lower partial plate, $440.00 for an upper plate, and the balance of $150.00 was for x-rays, treatments, office and hospital visits. Dr. LaNasa testified that the lower partial and the upper full denture were the best dentures he could obtain. He admitted that for $250.00 less he could have furnished dentures not as esthetic but which would have been equally serviceable insofar as masti- ' eating was concerned. He saw plaintiff six days after the accident. At that time plaintiff was wearing both lower and upper partial plates. The lower was broken beyond repair and the upper which contained five teeth, was also broken. We are satisfied from all of Dr. LaNasa’s testimony that two upper molars were injured and had to be extracted as a result of the beating plaintiff sustained and that plaintiff’s remaining five upper teeth would not hold a partial plate, necessitating the removal of these five teeth and the furnishing of a full upper denture. Although the extractions took place quite some time after the injury was incurred, the delay was occasioned primarily by the necessity of an operation we shall discuss later. We are not aware of any reason, and none has been offered,, why defendant should be liable only for cheaper dentures at a saving of $250.00. Plaintiff was not required to obtain the cheaper plates at the expense of his appearance. Defendant is liable for the entire dental bill rendered by Dr. LaNasa.
The two awards for plaintiff’s injuries and loss of earning capacity, totaling $18,-000.00, are excessive. We are satisfied that many of plaintiff's complaints are highly exaggerated and largely unsupported or contradicted by the medical testimony in the record. Among other things he complains of recurring headaches several times a week, daily swelling of the right side of the face, and sharp abdominal pains each morning upon arising even at the time of trial, almost three years after the incident occurred, a massive rectal hemorrhage which took place seventeen months after the incident, an inguinal hernia, which also took place months after the incident, a sac inside the mouth which made its appearance almost a year after the incident, and diminished energy and ability to earn a living in his trade. None of these troubles, and there is serious doubt as to the actual existence of some of them, are shown to have been caused by the encounter between the litigants. Plaintiff saw many doctors with many complaints but from all of the testimony, principally medical, we conclude that his injuries, and the pertinent history connected therewith, were as follows:
He was black and blue over the lower right side of the face and had a hematoma of the right eye with complete discoloration under the right eye. He also suffered a fracture of the right cheek bone, specifically, a fracture of the lateral part of the right orbit with no significant displacement and fractures of the lateral and superior wall of the right maxillary antrums with moderate displacement. On June 27, 1958, a plastic surgeon, Dr. Richard W. Vincent, performed an open reduction, under general anesthesia, to put the bone back in place. Plaintiff remained in the hospital until July 4, and was under outpatient care by Dr. Vincent for several weeks thereafter. The operation was not entirely satisfactory because of a remaining minor flattening of the cheek bone which had little effect on his appearance. Plaintiff must have satisfactorily recovered from the surgery approximately eight weeks after it was performed. In addition, as partially explained above in connection with the discussion involving the dentist, Dr. LaNasa, seven upper teeth were removed and he was required thereafter to wear a full upper denture. He suffered considerable pain and discomfort over a *455 period of time extended by the fact that the operative procedures necessarily had to be performed at different times; the dental work could not be done until the open reduction had completely healed. We are satisfied that at the time of trial he did continue to suffer some pain and certainly some discomfort and, according to the opinion of the surgeon, Dr. Vincent, this pain and discomfort could continue indefinitely.
 We find that plaintiff has failed to prove his claims for loss of earnings and loss of earning capacity. After recovery from his injuries his earning capacity was undiminished. And, although he complains extensively of the loss of work during the time that he was seeing doctors and recuperating because he was unable to supervise such work, insufficient proof has been offered to show the particular jobs in question and no proof has been offered to show the extent of the alleged losses. Such proof as was offered was only general in nature. We are of the opinion that plaintiff should be awarded the sum of $7,500.00 for the injuries he sustained.
With reference to the reconventional demand, defendant contends he is entitled to be recompensed for the following items in addition to those included in the judgment on reconvention: (1) loss of rental income from 22 units because of the delay of approximately six to eight weeks in their completion occasioned by the faulty work of plaintiff; (2) loss of rental income for ten days from one of the rooms as a result of non-use thereof while repairs were being made; (3) additional amounts expended by defendant to correct, repair and complete plaintiff’s faulty work; and (4) a correction of the date from which the note interest should run.
Defendant is not entitled to the award he claims for loss of rental income from the 22 units because of delay in view of the fact that the work appears to have been completed and accepted within the completion time as provided by the general contract. We say "appears” because the record reveals that only 129 working days were used, the contract provided for completion in 120 working days, and the additional 9 days easily could be accounted for by adverse weather conditions. There was no penalty clause in the contract between the litigants and the record does not contain sufficient proof of the actual delay in occupancy resulting from plaintiff’s faulty performance, or of the loss of profits occasioned thereby, to warrant a judgment for the same. Nor is there any merit to defendant’s claim for loss of rental income to one of the rooms resulting from non-use while repairs were being made. Defendant’s business records reveal that during the period in question the highest rate of occupancy enjoyed by the motel was 70%. Therefore it is clear that no rental loss occurred as a result of the non-use of one rental unit. Defendant has called to our attention 7 invoices for plumbing repairs which he paid, the need for which he claims was occasioned by the plaintiff’s faulty work. Two of these invoices are dated, respectively, February and September of 1960 and we find that there is insufficient proof to show that need for these repairs resulted from plaintiff’s fault. We do find that defendant is entitled to recover for the other 5 bills he paid. They total the sum of $205.91. Plaintiff was indebted to the defendant on a promissory note in the amount of $2,010.82, which amount defendant had advanced the plaintiff for materials. This note bore interest at 6% per an-num from maturity, was dated March 13, 1958 and was payable on demand. The judgment inadvertently allows interest from February 17, 1961 and the same will be corrected in order to allow interest from the proper date of March 13, 1958.
For the reasons assigned, the judgment appealed from is amended only insofar as to decrease the total award on the main demand in favor of the plaintiff from the sum of $19,532.21 to the sum of $9,032.21, to increase the total award on the recon-ventional demand in favor of the defend *456 ant from the sum of $3,437.42 to the sum of $3,643.33, and to allow the defendant interest at the rate of 6% per annum on the sum of $2,010.82 from March 13, 19S8, instead of from February 17, 1961. As thus amended, and in all other respects, the judgment appealed from is affirmed; plaintiff to pay the cost of this appeal, defendant to pay all other costs.
Amended and affirmed.