335 So.2d 747 (1976)
Arlene King BABINEAUX, Plaintiff and Appellant,
v.
PERNIE BAILEY DRILLING COMPANY et al., Defendants and Appellees.
No. 5465.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
Rehearing Denied August 18, 1976.
J. Minos Simon, Ltd. by Kenneth De-Jean, Lafayette, for plaintiff-appellant.
Dubuisson, Brinkhaus, Guglielmo & Dauzat by James T. Guglielmo, Opelousas, for defendants appellees.
Before HOOD, CULPEPPER and PETERS, JJ.
CULPEPPER, Judge.
This is a suit for damages for the wrongful death of Cecil Babineaux, who was shot during a labor dispute. Plaintiffs are the minor children of the deceased. Defendants are Willie Castille and Merlin Joseph Hanks, Jr., who were employed to guard a drilling rig owned by defendant, Pernie Bailey Drilling Company. Hanks fired the fatal shot. From a jury verdict absolving defendants of all liability, plaintiffs appealed.
The substantial issue is whether the defendant Hanks was justified in shooting Babineaux in self-defense.
The death of Babineaux occurred in the midst of labor strife in St. Landry Parish resulting from an attempt by Oilfield Workers Union Local 1152 to organize certain employees of the oil industry. Mr. Babineaux was Business Agent for the Union. The Union had caused shut downs at eleven oil rigs previous to their attempt to organize at the one involved herein. Another organizer who worked closely with Babineaux was George Dufore.
Beginning in 1966, the Union, through its organizers, Babineaux and Dufore, had begun attempting to secure pledge cards *748 from the employees of the Pernie Bailey Drilling Company. In January of 1967, a telegram was sent by the Union to Mr. Washburn, president of the Pernie Bailey Drilling Company in Texas. The telegram informed Mr. Washburn that approximately 85% of his employees at the Pernie Bailey rig had signed pledge cards and asked him to negotiate and collectively bargain with Oilfield Workers Union Local 1152. After no response was received from the Company, Mr. Washburn was notified that the employees would be pulled off its rig site in St. Landry Parish. Still no reply was received and two or three days later, the Union instructed the men who had signed pledge cards to stop work.
Subsequently, a protest demonstration occurred at the rig site in the very early part of February of 1967. It is the events following this protest that are of particular significance with respect to the eventual shooting of Cecil Babineaux. It was about the time of this first protest that Mr. Washburn became particularly concerned about the labor problems in Louisiana. He contracted with Southern Research Company for protection of his crews and for investigation, data gathering and photography.
In addition, he consulted with Sheriff D.J. "Cat" Doucet about the possibility of having sheriff's deputies guard the work crews and the rig. Sheriff Doucet then sent two men to the Pernie Bailey rig for purposes of guarding it. The two men were Willie Castille and Merlin Joseph Hanks, Jr.
Castille had been a "special deputy" for Sheriff Doucet for ten to twelve years. Hanks had been hired only for the particular purpose of guarding the Pernie Bailey rig. He was the son of long-time sheriff's deputy, Joseph Hanks, Sr. Each of the men obtained a badge through the office of Sheriff Doucet and each had a "special deputy" card showing that he was a sheriff's deputy. However, no bond was posted by the sheriff for their performance, no oath was taken by them, nor were the other formalities followed to make them regular deputies. They were paid by Pernie Bailey, not by the sheriff.
On February 8, 1967, which was the day before the shooting, Mr. Washburn was present in one of two trailers located adjacent to the rig on the Pernie Bailey well site. It was an open area adjacent to a blacktop highway. The area was fenced and the rig sat toward the rear of the plot some 200 yards from the highway. The only access to the rig from the highway was through a cattle gap in the fence paralleling the highway. A "board road" extended from the highway to the rig itself.
On the afternoon of February 8, there were present at the rig site, in addition to Mr. Washburn, guards Castille and Hanks, several employees of Southern Research Company, Joseph Hanks, Sr. and a full rig crew. There is a conflict between the testimony of the witnesses for the plaintiffs and of those for the defendants as to what occurred on that date. Plaintiffs' witnesses testified that Mr. Washburn had telephoned and invited Babineaux to meet him at the rig to discuss their problems. They say that despite Washburn's invitation, when Babineaux and Dufore arrived at the rig they were greeted with drawn guns and were ordered to leave. Dufore, although of course he was a plaintiffs' witness, testified Babineaux put his hand in his coat pocket and pointed his finger at the guard, as if he had a pistol, and said "Suppose I've got a gun and you've got a gun, if you are going to do anything, use your gun." The guard then put his pistol back into his holster and Babineaux and Dufore went into the trailer where they talked to Washburn.
Plaintiffs' witnesses testified further that on leaving the trailer, Babineaux was again accosted by defendant Hanks who had a drawn pistol in his hand and a large German Shepherd dog on a leash. Hanks *749 told Babineaux that he was under arrest for trespassing and he was going to put him in jail. Babineaux responded that Hanks did not have the authority to arrest him. Plaintiffs' witnesses say that Babineaux and Dufore then walked back on the board road to their car. They say that Babineaux made no threats and acted in a generally peaceful manner.
Defendants' witnesses gave an entirely different version of the events of February 8. Mr. Washburn testified he had not invited Babineaux to the rig. The defense witnesses testified that when Babineaux and Dufore entered the board road the guards ordered them off the premises and drew their pistols to force them to leave. Babineaux then put his hand in his coat pocket and pointed his finger at the guard, as if he had a pistol. Witnesses for the defense say that there was a heated exchange of words with Babineaux demanding to see Mr. Washburn. They say Babineaux was very excited, that his eyes were dilated and that he made threats of violence in a loud voice. There is testimony that Babineaux said to Mr. Perks, one of the employees of the Southern Research Company, "Get out of my way or I'll kill you."; that he said to Mr. Oster, also an employee of Southern Research Company who was taking pictures, "I'm going to stick him like a chicken and make him bleed."; and that he also threatened to kill others who were there.
Defendants' witnesses testified that after Babineaux left the trailer following his conference with Mr. Washburn, he stated that he was going to shut the rig down "one way or the other". These witnesses said Babineaux was cursing and screaming in a loud voice and stated that he was going to blow the rig up. Babineaux reportedly kept pointing with his finger in his pocket as if he had a gun. Mr. Hanks, Sr. tried to grab Babineaux's hand and pull it out of his pocket to see if he had a pistol. Babineaux spun around and almost knocked Hanks, Sr. to the ground. Babineaux told Mr. Hanks, Sr. he was "too old to be here, you ought to be with your old lady." He said to Hanks, Jr. that he was "too young to die."
This entire scene that occurred on February 8 was recorded on movie film by one of the members of the Southern Research team. The film was shown to the jury. From the movie, the jury could have reasonably believed that the events of February 8 were substantially as testified to by the witnesses for the defense.
On the night of February 9, a meeting of the Union was held in Lafayette. The membership decided they would go to the entrance to the rig site to try to prevent the men on the new shift from going to work. Estimates of the number of men who went to the rig vary from 30 to 80. There is a conflict between the testimony of the witnesses for the plaintiffs and those of the defendants as to the events which occurred at the rig that night.
Plaintiffs' witnesses testified the union members agreed they would stay on the road and make a peaceful protest with "no guns whatsoever." They went to the rig site at about 10:45 p.m., just before the change of working shifts. When the new crew arrived in an automobile, the union members gathered around it and attempted to persuade the occupants not to go to work. Plaintiffs' witnesses testified that as Babineaux was talking to the driver, Castille, who had been following the new shift in an escort vehicle, rushed up to Babineaux and said: "You're under arrest, you SOB, I am going to take you in," and that then he started hitting Babineaux over the head with his pistol. According to these witnesses, Babineaux made no response except to say "You don't have the authority to arrest me; call Cat Doucet, I'll go with him."
Plaintiff's version of the incident is that Castille continued to scuffle with and push Babineaux and then fired a shot over his head but missed. They say Babineaux *750 then backed off and had his hands out of his pockets when Hanks fired his shotgun, knocking off Babineaux's hat. According to these witnesses, Babineaux then threw up his hands and said: "Okay, okay, call the sheriff, I'm under arrest." Plaintiffs' version of the killing is that while Babineaux had his hands up, defendant Hanks deliberately fired his shotgun again from a distance of about 15 feet, striking Babineaux in the head and killing him instantly.
The version of the incident given by witnesses for the defense is entirely different. They testified that when the vehicle occupied by the new shift arrived, Babineaux said "don't let them through, men, they are not going to go over you, they are not going to run over you." Several of the union members got in front of the car to stop it. Then, when the escort vehicle pulled up and Castille jumped out, the driver of the work crew vehicle spotted a break in the crowd and sped on through down the board road to the rig. The defendant Hanks testified that as Castille jumped from the escort vehicle, Babineaux put both of his hands in his coat pocket and Hanks thought Babineaux had a gun. Babineaux turned toward Hanks with his hands in his pockets. Castille then tried to protect Hanks by hitting Babineaux on the head with his pistol, but was unable to effectively do so. Hanks testified that Babineaux turned back toward him with his hand in his pocket as if he had a pistol and at this point Hanks fired his shotgun the first time, intending to fire over Babineaux's head, but the shot knocked Babineaux's hat off. Hanks said that immediately after that, Babineaux reached down and picked up his hat, put it back on his head and kept coming toward Hanks. At this point, both Hanks and Castille fired. Castille missed, but Hanks hit Babineaux in the head.
Hanks testified he fired the fatal shot because he thought Babineaux had a pistol in his pocket and was going to shoot him. Castille also testified that he thought Babineaux had a gun and that he was going to kill Hanks.
It was ultimately determined that actually Babineaux had no weapon on his person. However, there is also testimony that Dufore and some of the other union members had warned Babineaux not to put his hands in his pockets and make threatening gestures as if he had a gun, because that would be dangerous.
On appeal, plaintiffs-appellants contend that the fatal shooting occurred on public property and was an attempted illegal arrest by persons with no legal authority to arrest. In addition, they suggest defendants, Hanks and Castille, were the aggressors and that therefore Babineaux had the legal right to resist by reasonable means. They urge that because Hanks and Castille were the aggressors, they "are not entitled as a matter of law to plead self-defense."
Conversely, defendants urge that Babineaux was the aggressor and that therefore defendants, Hanks and Castille, had the legal right to use such force as was reasonably necessary to repel his attack.
There is no dispute as to the applicable law. In a suit for damages for battery, a plaintiff cannot recover where he was the aggressor who provoked the difficulty in which the injury was received. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Squyres v. Phillips, 285 So.2d 337 (La.App. 3rd Cir. 1973).
Furthermore, the rule is established that even where the plaintiff was the aggressor, the person retaliating may use only so much force as is reasonably necessary to repel the attack, and if he goes beyond this he is liable for damages. Tripoli v. Gurry, supra, Oakes v. H. Weil Baking Company et al., 174 La. 770, 141 So. 456 (1932).
In the present case the testimony is in conflict, as stated above, but there is ample evidence which, upon its reasonable *751 evaluation of credibility, the jury could have reasonably found that Babineaux was the aggressor. His actions on February 8 were highly aggressive. Without an invitation, he and Dufore went to the rig and trespassed upon the well site. He threatened to kill people, to blow up the rig and to shut down the drilling by whatever means necessary. Then on the night of February 9, he returned with what was literally a "mob" and lead them in aggressive acts. Babineaux ordered his men to block the entrance to the board road and to prevent the passage of the automobile carrying the new crew. When Hanks and Castille attempted to clear the way, Babineaux put his hands in his coat pockets and pointed as if he had a weapon, his obvious purpose being to frighten Hanks and Castille. According to the testimony of the defense witnesses, whom the jury had a right to believe, there is no question that the aggressive acts of Babineaux caused this entire altercation.
Having concluded that Babineaux was the aggressor, the next question is whether Hanks used reasonable force in repelling this aggression. In determining what force is justified in repelling an attack, or what is reasonably believed to be an attack, we must consider all of the facts and circumstances attendant at the scene of the incident. One of these factors is the character and reputation of the person making the attack. In this case, Hanks knew that on the day before Babineaux had threatened to kill people, to blow up the rig, and to do anything necessary to stop drilling operations. It was certainly reasonable for Hanks to believe that Babineaux was a violent man.
Furthermore, the entire scene was one of violence and apprehension for those involved. A "mob" of men were attempting to prevent the entrance of the automobile carrying the new crew. Everyone was excited and tempers were at the breaking point. When Babineaux thrust his hand into his pocket and pointed toward Hanks as if he held a weapon, Hanks was justified in using his own weapon to repel the attack. It is important to note that Castille also thought Babineaux was about to shoot Hanks, and that Castille also fired a shot at Babineaux, but missed.
The record in this case is voluminous and contains the detailed testimony of witnesses who gave contradictory versions of the occurrences. The jury obviously chose to believe the version of the facts presented by the defendants. Under those facts, Babineaux was the aggressor and Hanks was justified in shooting Babineaux in self-defense. Clearly, the record contains a reasonable evidentiary basis for these conclusions by the trier of fact. Canter v. Koehring, 283 So.2d 716 (La.1973).
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.