396 So.2d 569 (1981)
Joe Edward STARK, II, Plaintiff-Appellant,
v.
TOWN OF MERRYVILLE et al., Defendants-Appellees.
No. 8037.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
Writ Refused May 1, 1981.
*570 Offices of Thomas W. Sanders, L. Donald Foreman, Lake Charles and Jones, Jones & Alexander, J. B. Jones, Jr., Cameron, for plaintiff-appellant.
Stockwell & Associates, Robert W. Clements, Lake Charles, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
LABORDE, Judge.
This is a tort suit. The plaintiffs-appellants, Joe Edward Stark, Sr. and Joe Edward Stark, II sued the Town of Merryville, the Town of Merryville Police Department, Jack Melton Hennigan and Western World Insurance Company, insurer for the Town of Merryville, to recover damages for personal injuries received in a shooting incident on September 30, 1978.[1] The trial court determined Deputy Marshall Hennigan used reasonable force in defending himself against an attack by the Starks. Plaintiffs appeal. We affirm.
The defendant, Jack Hennigan, is a deputy marshall for the Town of Merryville, Louisiana. On September 30, 1978, at approximately 8:25 p. m., Hennigan became involved in an altercation with the Starks outside the rear of Blackmon's Garage in Merryville. It resulted in the shooting of Joe Edward Stark, Sr. (Joe Ed) and his son, Joe Edward Stark, II (Joey). Both Starks suffered serious injuries.
The law is clear that an individual cannot recover damages for a battery if the evidence establishes that he was at fault in provoking the difficulty in which the injury complained of was received, unless it can be proved the person attacked used excessive force in defending himself. Duhon v. Delcambre, 365 So.2d 516 (La.App. 3rd Cir. 1978); writ refused, 368 So.2d 136 (La. 1979).
The standard employed in determining whether the force used by an officer is reasonable is that of an ordinary, prudent and reasonable man placed in similar circumstances. It is a factual issue. Several factors to be considered are the known character of the arrestee, the risks and dangers faced by the officer, the nature of the offense involved, the chance of the arrestee's *571 escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officer as compared to the arrestee, and the exigencies of the moment. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).
About a week before the shooting, Hennigan gave Joey a ticket for drinking in public. Joey became very upset and refused to sign the ticket until Hennigan threatened to arrest him. Hennigan refused to allow Joey to drive since Joey appeared to be drunk. There is conflicting testimony as to whether Joey actually threatened to make Hennigan pay for giving him a ticket.
Each side presents a different version of the events which took place on the evening of September 30, 1978. The only eye-witnesses are the parties themselves.
Joe Ed, his wife and Joey were returning from a day spent helping a friend do some work at a camp on the Sabine River. Each of the men drank approximately five beers during the day and were drinking as they drove into town. The Starks lived in Merryville and knew Hennigan.
Joey was driving as the Starks came into Merryville turning north on Highway 110 from Railroad Street. Highway 110 runs north and south being intersected by Railroad Street several blocks south of Blackmon's Garage. Blackmon's Garage is on the east side of Highway 110. Hennigan was parked facing south on the west side of Highway 110 near a service station north of Railroad Street.
Hennigan testified he went on duty at 8:00 p. m. on September 30, 1978. While parked at the service station, he saw Joey's pickup truck turn onto Highway 110. Joey spun his wheels as he turned, failing to stop at the intersection. Hennigan turned on his patrol car's flashing lights and called out to Joey to pull his truck over motioning to the parking area in front of City Hall. City Hall is south of Blackmon's Garage on the same side of Highway 110. Joey answered him and proceeded down Highway 110 past City Hall pulling off the road to the rear of Blackmon's Garage.
Hennigan by then was in his patrol car making a U-turn onto Highway 110 heading north. He intended to give Joey a ticket for reckless driving. Hennigan pulled the patrol car off Highway 110 stopping behind Joey's pickup truck. It was dark at the rear of the garage so he left his headlights on. Joey got out of the pickup truck and bent over with his left hand in his pocket.
Hennigan got out of the patrol car carrying a flashlight in his right hand asking Joey, "What is wrong with you, son?" Joey answered, "I don't know, by God, I must be crazy." As Hennigan spoke to Joey, Joe Ed came around the truck. Hennigan told Joe Ed to talk to his son, when Joe Ed grabbed him around the neck saying, "Now you son-of-a-bitch, we have got you where we want you and we will straighten you out." As they struggled, Hennigan tried to hit Joe Ed with the flashlight to free himself. Hennigan drew his pistol in an attempt to make the Starks back off. As he did so Joey ran up and grabbed the pistol and his arm with both hands. As the struggle continued the pistol discharged hitting Joey in the left leg. Joey fell to the ground.
Hennigan and Joe Ed continued to struggle and Hennigan intentionally fired the gun. The first shot went wild but the second shot struck Joe Ed in the lower left front side. Hennigan testified that he feared that if the Starks got him to the ground he would be beaten severely or possibly killed. He believed the attack was in retaliation for the ticket he gave Joey a week before.
At the time of the incident, Hennigan was forty-one years old, 5'7" tall and weighed 130-135 pounds. Due to an industrial accident, Hennigan had little use of his left hand. Missing was the thumb, middle finger and most of the index finger. Joe Ed was forty-five years old, 6' tall and weighed 180 pounds. Joey was twenty-three years old and approximately the same size as Hennigan.
Joe Ed testified that he never saw Hennigan motion Joey to pull over or heard him call out as they drove down Highway 110. *572 Nor did he see the red lights flashing on the patrol car. They pulled into the rear of Blackmon's Garage so Joey could go to the bathroom. As Joey got out of the pickup truck, Hennigan pulled in behind them and started to talk to Joey. Joe Ed got out of the pickup truck to find out what was going on. He did not see a flashlight in Hennigan's right hand. Joe Ed went to Hennigan and put his hand on Hennigan's right shoulder. Hennigan appeared angry and slapped his hand away. Joe Ed turned away and walked toward the pickup truck. From about ten feet, Hennigan then shot him in the lower left back turning him around and knocking him to the ground.
Joey testified that Hennigan appeared to panic and he feared Hennigan was going to shoot his father again. So he grabbed the gun with both hands and began struggling with Hennigan. As they struggled, two more shots were fired. The second shot struck Joey in the left leg. He fell to the ground and crawled to his father's side.
One of the first people to arrive at the scene was John Frusha. He saw the red lights flashing on the patrol car and went to see what was going on believing there might have been a break-in at the garage. Mrs. Stark was yelling at Hennigan and slapping him. He pulled her away and saw the Starks lying on the ground. Hennigan was standing motionless with his right arm stretched out holding the gun at his side. Mrs. Stark was unable to testify as to what occurred as she was in the pickup truck at the time of the shooting and was not watching.
The Starks were taken to Charity Hospital in Lake Charles, Louisiana. Dr. Joseph A. Pedone, a second year internal medical resident, assisted in the treatment of Joe Ed. Though he has no training in forensic medicine, Dr. Pedone while working for the Orleans Parish Coroner's Office doing assistant pathology work examined over a hundred gunshot wounds. It was his opinion that the bullet entered Joe Ed from the front, though he did admit to some uncertainty because at the time he was more concerned with treating Joe Ed than determining how he was shot. Dr. Pedone's testimony is in direct conflict with the Stark's testimony that Joe Ed was shot in the back.
Several other witnesses were called to testify. Debbie Tucker, an off-duty deputy marshall who was talking to Hennigan shortly before the shooting, believed she saw Joe Ed and Hennigan fighting near the garage but she could not say how the shooting occurred. Rachel Sadler, a friend of Hennigan, testified to being out with Joey the evening before and upon seeing Hennigan, Joey made a remark that he would get Hennigan for giving him the ticket. She was also with Debbie Tucker the night of the shooting but did not actually see the shooting.
Where the evidence is conflicting, the trial court's reasonable evaluation of one set of witnesses as credible cannot be disturbed on review absent manifest error. Canter v. Koehring, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial judge concluded that the Starks attacked Hennigan and that Hennigan used reasonable force in defending himself. Upon review of the record, there is sufficient evidence to support the trial judge's conclusion.
The decision of the trial court is affirmed. Costs of this appeal are assessed to appellant, Joe Edward Stark, II.
AFFIRMED.
NOTES
[1] Since this case and # 8036, Stark v. Town of Merryville, et al, 396 So.2d 572, involved substantially the same issues, they were consolidated at trial. Thus we will discuss the issues only in the case # 8037, although a separate opinion is being handed down this day in # 8036.