426 So.2d 652 (1982)
Alean COLEMAN, on Behalf of her minor daughter, Vanessa MATHEWS
v.
James W. MOORE and Trinity Universal Insurance Company.
No. 82-CA-0213.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.[*]
Writs Denied April 15, 1983.
Vanessa Mathews, The Properly Substituted plaintiff, for Alean Coleman.
Trinity Universal Ins. Co., for defendant appellee.
James W. Moore, pro se.
Before PONDER, SAVOIE and ELLIS, JJ.
ELLIS, Judge.
This is a suit for damages for personal injuries arising out of a shooting incident. Plaintiff is Vanessa Mathews, who was a minor at the time suit was filed, but who attained majority prior to trial. The original defendant was James Moore, who denied liability, and pled fault, contributory negligence and assumption of risk on the part of plaintiff. Moore also third partied Trinity Universal Insurance Company, his liability insurer. Plaintiff then impleaded Trinity as a defendant. Trinity denied coverage on the basis that plaintiff's injuries were caused by an intentional act on the *653 part of Moore. Trial was held on the merits before a jury, which returned a verdict in favor of defendant. From the judgment dismissing her suit, plaintiff has appealed.
Plaintiff's testimony, which is supported by that of Harriet Nell Lockett, is that she and Harriet were looking for an apartment to rent, and called on Moore for that purpose. He asked them to return later, which they did. While he was showing them around his apartment, he got plaintiff alone in his bedroom, pointed a shotgun at her and ordered her to disrobe. Plaintiff said she had removed all of her clothing except her brassiere, when Harriet entered the room, distracting Moore. Plaintiff then seized a lamp and hit Moore over the head with it, knocking him down. She retrieved her pants, got a small can of mace from her pocket and sprayed it on Moore. She and Harriet then ran from the house. She stated that, after she was in the yard, she heard shots, and was wounded in the buttocks.
According to defendant, when the girls returned to his house for the second time, plaintiff went to the bathroom, from which she emerged clad only in her brassiere. She then began to dance around. He went to the bedroom, and she followed him there and sprayed him with mace.
Then Harriet came in and they hit him in the head with the lamp. He said that he was bloody and knocked out. He stated that he was beaten, kicked, and stomped in the bedroom. When he came to, he and the girls fought in the living room and he then went to the front porch and fell. He then called for help. He had no recollection of using the shotgun. He was clad only in a T-shirt when he was on the front porch. When the fight started he was fully clad, and could not recollect how he came to be disrobed.
A police investigator found a pump shotgun which had one shell in the chamber. He found one wad from a shotgun shell on the front porch of the house, and another about 30 feet from the house. He found one empty shotgun shell under defendant's truck near the front porch. He did not find a second shell, although he testified that he searched for it, both in and out of the house. He testified that the closest evidence of blood he found was in the yard eight or ten feet from the front porch.
Moore's sons testified that they examined the premises on the morning after the incident, and found an empty shotgun shell in the hall of the house, under a bench. They also said that they found bloodstains on the front porch.
The jury brought in special verdicts to the effect that James Moore shot and injured plaintiff, that he was not negligent in so doing, and that he intended that his actions would cause her injury. The jury further found that plaintiff was contributorily negligent, that she assumed the risk, that James Moore acted in self-defense, and that plaintiff was not entitled to recover damages.
It is evident from the verdict that the jury was of the opinion that Moore deliberately fired on Vanessa Mathews, but that Vanessa was the instigator of the incident, and therefore the aggressor, and was barred from recovery.
It is settled law that an aggressor cannot recover for injuries suffered in an altercation, unless the injuries result from the use of excessive force to repel the aggression, or the injuries are suffered after the aggressor has retired from the fray. Graves v. Irwin, 396 So.2d 384 (La.App. 1st Cir.1981); Landry v. Gilger Drilling Company, 92 So.2d 482 (La.App. 1st Cir.1957).
It is evident from the record that Vanessa Mathews was leaving the premises when she was shot. She was wounded in the buttocks, and the preponderance of the evidence shows that she was in the yard, some eight or ten feet from the porch when she was hit. It is clear that she had retired from the fray when she was wounded, so that, even if she were the original aggressor, the original altercation had ended when she left the house. Moore's act in firing at her was not necessary to repel the original aggression and, under the circumstances, was an excessive use of force.
*654 We therefore find that the jury was manifestly erroneous and clearly wrong in denying recovery to Vanessa Mathews for the injuries received by her when she was shot by Moore.
Vanessa Mathews was shot on February 18, 1977. She was taken to a hospital, where it was found that she had sustained a shotgun blast to the left buttock. She had no motor function in her left foot, and no sensation in the foot and lower left leg. This was due to a damaged sciatic nerve. She suffered no arterial or vein damage.
She was treated by having the wound cleaned and packed. The packing was changed frequently to keep the wound clean and promote healing. This procedure was characterized as causing mild to moderate pain. The hospital records show that no pain medication was given plaintiff during her entire stay in the hospital. By the time of her discharge from the hospital on March 8th, she had almost recovered from the blast wound but had no return of her sciatic nerve function.
After her discharge from the hospital, she received physical therapy and then was referred to the New Orleans Neurosurgery Clinic. She was first seen there on May 31, 1977, and a brace was placed on her leg. A nerve conduction study was done in June, and by July 26, there was still no significant improvement in her condition. Three months later, however, her ankle function was quite good, and sensation had returned except for her left big toe. She was finally discharged as "well" on February 10, 1978. At that time, she was still walking with a slight limp, and had no sensation in her left big toe, but was otherwise recovered. It was estimated that she would have a 95 to 98 percent recovery.
As of the time of the trial, in December, 1981, plaintiff complained of occasional swelling in her left ankle from standing, and some problem with her left big toe.
From all of the above, we gather that plaintiff suffered a wound from which she had an excellent recovery within a year. Apparently, it was painful only in the beginning, and only moderately so. Considering all of the circumstances, we think an award of $20,000.00 will adequately compensate plaintiff for her pain, suffering and disability.
The final question presented is the liability of Trinity Universal Insurance Company, Moore's liability insurer. Trinity denied coverage in this case on the ground that the policy did not extend to intentional acts of its insured. The precise language of the policy limits coverage to "an accident... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The trial jury found that Moore shot the plaintiff, that he was not negligent in so doing, and that he thereby intended to cause bodily injury to plaintiff. There is evidence in the record from which these conclusions reasonably can be reached. We find no manifest error in these conclusions. It is clear that Moore's intentional act of shooting plaintiff is not covered by the policy.
The judgment appealed from is reversed insofar as it affects James Moore, and there will be judgment herein in favor of plaintiff and against James Moore for $20,000.00, with legal interest from date of judicial demand until paid. In all other respects, the judgment is affirmed. All costs shall be paid by defendant James Moore.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[*] Savoie, J. would grant a rehearing.