469 So.2d 359 (1985)
Bill PERKINS, Plaintiff-Appellee,
v.
James CERTA (Cerda), Defendant-Appellant.
No. 16971-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*360 Joe D. Guerriero, Monroe, for defendant-appellant.
Wright, Parker & Loftin by Daniel P. Parker, Monroe, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
MARVIN, Judge.
In this action for damages intentionally inflicted, defendant appeals a judgment against him, contending that his actions were justified and alternatively, that the $2,500 damage award is excessive and should be reduced to about $250.
While the testimony conflicts about the altercation between defendant and the plaintiff, who was with defendant's estranged wife when the altercation occurred, we do not find the trial court was clearly wrong in its findings or that it abused its discretion in awarding damages. Accordingly, and on the authority of Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), we affirm.

THE FIGHT
Defendant had been physically separated from his wife, Sandra Cerda, for about two weeks before the altercation. Ms. Cerda remained in the family residence after defendant moved elsewhere.
Plaintiff and another man went to a Monroe bar where they happened to meet Ms. Cerda and her friend, Ms. Pat Richardson. Both men were friends of Ms. Richardson. Ms. Richardson suggested that the men drive them home. Plaintiff's friend drove Ms. Richardson home in her car. Plaintiff drove Ms. Cerda home in his car.
Defendant earlier went to his former residence to see his wife and his minor daughter. He read a note left on the door informing him that his wife had gone out for the evening and had left the child at a neighbor's home. He returned to the residence after midnight and awaited his wife's return. He parked his car down the street away from the home and walked back to the house where he waited in or near some shrubbery. Within minutes, plaintiff's car drove into the driveway.
Plaintiff said that he left his car running and engaged in brief conversation with Ms. Cerda inside the car. Defendant said that he observed his wife embrace plaintiff inside the car. Defendant then approached the car, pulled his wife from the passenger seat, and began to strike her, causing wounds that later required 17 stitches.
Plaintiff testified that he first feared for his safety and did not want to be involved with a family dispute. He was backing out of the driveway when he saw the extent of the dispute and stopped his car. From inside the car, he shouted for defendant to stop hitting Ms. Cerda. Perceiving that he might be attacked, plaintiff said he took an *361 unloaded gun from under the car seat, got out, and stood in the driver side doorway as defendant approached him. Plaintiff knew the gun was not loaded.
According to defendant, plaintiff pointed the gun at him and "snapped" it. The gun did not fire. Defendant said he was afraid that the gun had misfired and that plaintiff might try to shoot again, so he hit plaintiff on the head with his fist.
Under plaintiff's version of the incident, he did not raise the gun toward defendant because, when defendant came around to the driver side of the car, he stopped, apparently seeing the gun, and said to plaintiff, "You don't need that." Plaintiff then reached to put the gun back in the car and noticed what he described as a black object, about eight inches in length, in defendant's raised hand. Plaintiff said he "lunged out" and "that's when it [the black object] hit me in the head." After defendant struck plaintiff "a couple of more times in the side," plaintiff managed to wrestle defendant to the ground and "calm him down."
The trial court granted plaintiff damages for pain, suffering, and mental anguish, finding that defendant was the aggressor throughout the incident; that, after observing defendant beat Ms. Cerda, plaintiff's fear for his safety was "reasonable;" and that plaintiff did not point the gun at defendant and pull the trigger. Plaintiff did not appeal that portion of the judgment denying his claim for medical expenses and loss of past earnings.

PLAINTIFF'S CONDUCT
Louisiana's aggressor doctrine precludes tort recovery where the plaintiff acts in such a way to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor plaintiff. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Freeman v. Bell, 366 So.2d 197 (La.App. 2d Cir.1978); Graves v. Irwin, 396 So.2d 384 (La.App. 1st Cir.1981); Levesque v. Saba, 402 So.2d 266 (La.App. 4th Cir.1981).
A plaintiff is said to be the aggressor when he is at fault in provoking the altercation in which he was injured. West v. Jones, 411 So.2d 532 (La.App. 1st Cir.1982); Neville v. Johnson, 398 So.2d 111 (La.App. 3d Cir.1981). The question of which party is the aggressor must be decided on the peculiar facts and circumstances of each situation. Rahm v. Exxon Corp., 399 So.2d 676 (La.App. 1st Cir.1981); D'Angelo v. Rodriguez, 153 So.2d 450 (La.App. 4th Cir.1963); Babineaux v. Pernie Bailey Drilling Company, 335 So.2d 747 (La.App. 3d Cir.1976).
Defendant argues that the testimony of a deputy sheriff who investigated the incident discredits plaintiff's version. Just hours after the altercation, defendant reported to the deputy the same version of the incident that he later advanced at trial. Plaintiff, however, reported to police that defendant had struck him once with his fist and did not mention the blackjack until this action was commenced.
Inconsistencies in plaintiff's statements regarding the instrument of defendant's attack are to be weighed by the trier of fact and not by the appellate court. The issue is whether plaintiff was "at fault in provoking the incident." If plaintiff was found to be the aggressor, his statements would be more relevant to the reasonableness of the force defendant used to repel the attack. We also note that plaintiff's statements to the deputy about his handling of the gun are consistent with his trial testimony.
Defendant next contends that his version of the incident has to be accepted because the gun would not have had any effect on him unless it was pointed at him. He further argues that the fact that the gun was actually found unloaded tends to show that plaintiff pulled the trigger because defendant would not have told the deputy, shortly afterward, that the gun had "misfired."
The trial court could have accepted plaintiff's version and did not err in doing so. Although plaintiff admittedly had a gun in his hand, the trial court found that he was putting it back in his car after defendant *362 said, "You don't need that." Ms. Cerda did not see the altercation because she was on the ground near the opposite side of the car because of the beating defendant had inflicted upon her.
The trial judge is considered to be in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court who does not see or hear the witnesses. For that reason, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, supra.
Under this record, we cannot say that the trial court clearly erred in finding that plaintiff was "not at fault in provoking the altercation in which he was injured."

REASONABLENESS OF DEFENDANT'S RESPONSE TO PLAINTIFF'S CONDUCT
A finding that the presence of the gun caused defendant to initially fear for his safety, would not avail defendant. Recovery is allowed, even where the plaintiff is the aggressor in the first instance, where the initial victim uses excessive force to defend himself. Excessive force is that which is greater than necessary to repel the attack. Stark v. Town of Merryville, 396 So.2d 569 (La.App. 3d Cir.1981); Flores v. Black, 260 So.2d 144 (La.App. 2d Cir. 1972); Porche v. Fernandez, 286 So.2d 418 (La.App. 4th Cir.1973); Hartfield v. Thomas, 45 So.2d 216 (La.App. 1st Cir.1950).
The presence of a gun does not mean that an attack was made by either party. The cases which justify use of a dangerous weapon to repel an attack, therefore, do not apply here. See Levesque v. Saba, supra; Mullins v. Pence, 290 So.2d 803 (La.App. 1st Cir.1974). Although plaintiff may have enhanced appellant's apprehension of harm by producing the gun, plaintiff did not attack defendant or use deadly force.
Defendant's action was not in response to an attack or to a reasonable apprehension of injury but was found to be aggression in the first instance.
Plaintiff's testimony regarding the blackjack admittedly is uncorroborated. Plaintiff did not tell the investigating deputy that defendant used a blackjack. Nonetheless and even if delivered by defendant's fist, the violence of defendant was sufficiently forceful to cut and bruise plaintiff's head. The degree of harm which defendant might have feared greatly diminished when plaintiff started to put the gun away. The gun, although present, was not being used in a threatening manner when defendant threw the first blow to plaintiff's head.
It may also be said that plaintiff was retreating from any potential altercation when he put the gun back on the car seat after being assured by defendant that the gun wasn't needed and "everything was okay." Violence that may be initially justified ceases to be justified when the original victim begins or continues to use physical force against an initial aggressor who has peacefully retreated from the altercation or has attempted to do so. Graves, Hopper, supra; Coleman on Behalf of Mathews v. Moore, 426 So.2d 652 (La.App. 1st Cir.1982).

QUANTUM
Appellant argues that the trial judge abused his discretion by granting $2,500 damages when plaintiff failed to produce medical reports and bills or lay testimony to corroborate the nature and extent of his injuries. Medical testimony is not always necessary to prove general damages for pain, suffering, or disability. Campbell v. Mouton, 412 So.2d 191 (La. App. 3d Cir.1982).
The trial judge relied on plaintiff's testimony that he suffered a large cut and bruise on his head that caused headaches and intermittent bleeding for days after the incident. Plaintiff also said that pain from bruises on his ribs caused difficulty in coughing and sleeping. The deputy testified that he observed the injuries to plaintiff's head. Plaintiff also said that he was embarrassed to tell family and friends how he sustained his injuries.
*363 We see no abuse of discretion. The trial court has much discretion to fix the amount of general damages in tort action. La. CC Art. 1934(3); Coco, supra; Ramphrey v. Highlands Ins. Co., 406 So.2d 691 (La.App. 2d Cir.1981); Smith v. Louisiana Farm Bureau Mut. Ins. Co., 440 So.2d 801 (La.App. 1st Cir.1983); Paine v. Checker Cab Co., Inc., 343 So.2d 380 (La.App. 4th Cir.1977).
The case of Foster v. Barker, 306 So.2d 910 (La.App. 1st Cir.1974), in which a plaintiff with apparently more severe injuries was awarded $2,500 damages is inapposite. Foster's aggression and fault in causing or provoking the altercation served to mitigate his damages. Plaintiff here was not found to have unreasonably provoked defendant. The more recent cases have awarded damages ranging from $2,500 to $4,000 in general damages. See Dean v. Nunez, 423 So.2d 1299 (La.App. 4th Cir. 1982); and Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982).
At appellant's cost, we AFFIRM.