MARVIN, Judge.
In this action for damages inflicted by a battery, plaintiff appeals seeking to increase the $592.50 awarded by the trial court. Defendant answered the appeal to reassert his reconventional demand against plaintiff for damages for mental anguish for trespass that was also denied by the trial court. Defendant also argues that the alleged battery was legally justified and absolves him of any liability, or, if not, that damages awarded were excessive and should be reduced.
Finding no clear error in the findings of fact or abuse of discretion as to the damages awarded, we affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The incident occurred at dusk near defendant Odom’s residence at the corner of Cedar and Thomas Streets in Farmerville. Plaintiff Edwards’ home is on the opposite side of Cedar Street about one house away from the corner where Odom lives. These neighbors had been involved in an ongoing dispute apparently because Odom did not accept Edwards moving into the neighborhood.
The testimony of what occurred is in sharp conflict. Edwards was walking along Thomas Street toward his mobile home after retrieving Clyde, his two-year-old Doberman Pinscher that had escaped from a pen. Edwards said he was holding Clyde by the collar. Odom was standing or sitting near a pickup truck parked in his driveway. As Edwards was passing in the street, he told Odom that he wished to try to resolve their problem. Odom said he refused to converse with Edwards and told him to leave.
Odom testified that he was sitting behind his pickup truck a few feet from his house and about 30 feet from the street as Edwards walked in the middle of the street with Clyde on a “very short leash.” Odom said he became frightened when Edwards and Clyde continued to approach him and entered his driveway, contrary to Odom’s “second” warning not to do so. He said he “believed” Edwards had a weapon because he kept one hand in his pocket and that Edwards was “nudging” Clyde along in a threatening manner. Odom said he then “grabbed a piece of material about yea long [a harness hame, from his pickup truck] and decided to stop him.” Odom said when Edwards and Clyde continued to approach after a “third” warning, he struck Edwards with the hame on the left side of his head.
Edwards testified that he was attempting to talk out and reconcile their differences and that he and Odom “had a conversation going” about their “problem” as he walked toward Odom. Odom was standing near the rear of the truck about 10 feet from the street. Edwards said that he stopped in the street without entering Odom’s property and that when he saw Odom reach into the truck for something, he turned to continue on his way. He said Odom' then advanced toward him with the harness hame, said, “I’ll knock your brains out,” and struck him as he was walking away. There was no further altercation. *1020 The trial court accepted Edwards’ version. We cannot find this conclusion a clearly wrong credibility assessment. Arceneaux, supra.
SUFFICIENCY OF THE AWARD
Edwards had four stitches taken in his scalp and incurred $92.50 in medical expenses. The trial court awarded general damages of $350 for pain and suffering and $150 for a permanent scar to Edwards’ scalp.
On appeal, Edwards contends the lowest amount the trial court could have legally awarded is $2,000 for pain and suffering and $1,500 for the scar. The record, however, does not indicate that the trier of fact abused its great discretion in fixing damages. Coco, supra.
The award does not shock the judicial conscience and Edwards has not demonstrated that the lowest range of the trial court’s discretion is something more than $500. Each damage award is founded on the facts and circumstances of the particular case. Edwards did not show need of further medical attention after the wound healed or that the injury affected the performance of his work. Edwards testified that he had “headaches for quite awhile” after the incident and that he had an “occasional headache” at the time of the trial 20 months later. Edwards did not, however, introduce medical testimony to relate the cause of the later occasional headache to the incident. Although the fact that Edwards was intentionally injured might have justified our affirming a higher award, we do not substitute our assessment of damages for that of a trier of fact without a showing of an abuse of discretion. See Wattik v. Lewis Grocer Co., 476 So.2d 444 (La.App.2d Cir.1985); and Coco, supra.
ODOM’S DEFENSES AND RECONVENTIONAL DEMAND
Odom contends that he was justified in using this degree of force to repel what he perceived as aggression from Edwards and the dog. He argues that earlier friction between him and Edwards, coupled with the presence of Clyde and the manner in which Edwards handled the dog, produced a reasonable fear that he was in immediate danger of serious physical harm.
First, Odom contends Clyde’s presence and appearance frightened him. He complains that the trial court erroneously failed to consider stipulated testimony of a dog expert that a “doberman ... innately and inherently has vicious propensities.” He also emphasizes that Edwards testified that doberman dogs are “vicious in appearance” and that “most people perceive them on appearance as ... vicious ...” Odom said he also owned a doberman when the incident occurred and had since put that dog to sleep and acquired another. Edwards said he had owned several dobermans in his lifetime and had occasionally bred them.
Odom secondly argues that he had reason to perceive that he was being attacked because Edwards had previously displayed hostility or unfriendliness toward him. He pointed out that Edwards had once refused his help during a fire in Edwards’ mobile home. Edwards, however, repeatedly explained that on the day of the attack he simply was trying to talk to Odom about their differences.
Odom’s use of a weapon in self defense is justified only if Edwards acted in a way that would provoke a reasonable person to fear or anticipate injury at the hand of an agressor. Edwards is barred from recovery only if he was at fault in provoking the altercation in which he was injured and was the aggressor in the first instance. Perkins v. Certa, 469 So.2d 359 (La.App.2d Cir.1985); Levesque v. Saba, 402 So.2d 266 (La.App.4th Cir.1981).
Even if Edwards’ conduct is assumed as the initial aggression, he may still recover if Odom used greater force than was reasonably necessary to repel the aggression. Perkins, supra; Stark v. Town of Merryville, 396 So.2d 569 (La.App.3d Cir.1981).
*1021 The record supports the trial court’s finding that Edwards was not the aggressor and that, even if he was, Odom used more force than was reasonably necessary to repel the assumed “attack.” These findings are based entirely on the conflicting testimony of each litigant. We find no clear error.
The trial court did not accept, as credible, Odom’s version. In excellent and thorough written reasons, the trial court said that Edwards’ “request to speak with [Odom] concerning any bad feelings between them was calculated to avoid such incidents as this particular one.” He found Edwards’ version more credible because Edwards “related the sequence of events ... always consistently and believably.”
Odom’s contention that Clyde’s appearance or presence could reasonably have caused Odom to perceive danger, even when coupled with past friction between the parties, was rejected by the trial court. The trial court did not totally reject the stipulated expert opinion evidence on the “vicious propensities” of dobermans, generally, and obviously considered this opinion in light of the experience of Odom and Edwards with dobermans and their respective testimony concerning Clyde’s behavior during the incident. The court said:
... the “vicious” dog, Clyde, the ostensible catalyst of defendant’s great fear, remained completely calm even after the attack on his master, while restrained only by plaintiff’s hand on his collar. In fact, defendant could not even testify that the dog had so much as growled at him ... Plaintiff testified that Clyde did not growl at Mr. Odom at any time ... When questioned about the conduct of his dog, plaintiff stated “I couldn’t make him attack if I wanted to because he’s not a vicious dog. He’s not an attack dog.”
These findings are supported by the record. The trial court’s finding of liability is not manifestly erroneous or clearly wrong.
Odom alternatively argues that even if Edwards did not enter the Odom driveway or yard, Edwards became the “counter aggressor” by waiting for Odom’s attack and not attempting an available retreat. This scenario, however, depends on the acceptance of Odom’s version of the incident, which the trial court rejected in favor of Edwards’ testimony that Odom advanced upon and attacked him as he was turning and leaving.
Odom contends that Edwards failed to prove the extent of his pain and suffering and that the trial court award in this respect is therefore excessive. Edwards’ failure to seek medical attention beyond immediate treatment for his head laceration, however, does not altogether preclude recovery for pain and suffering. Pain and suffering may be proved without direct medical evidence where the nature and result of the injury inferentially corroborates a plaintiff’s testimony that he has suffered or is suffering pain. Perkins, supra.
The only evidence on the purely factual issue of trespass came from Odom. The trial court’s finding that Edwards did not enter on the Odom premises is not clearly wrong.
AFFIRMED. Costs of the appeal are assessed one-half to each litigant.