700 So.2d 886 (1997)
Hamid SUSANANBADI
v.
Robert H. JOHNSON.
No. 97-CA-91.
Court of Appeal of Louisiana, Fifth Circuit.
September 17, 1997.
*887 Samuel W. Ethridge, Kenner, for Appellant Robert H. Johnson.
Alvin J. Bordelon, Jr., William C. Ellison, T.A., New Orleans, for Appellee E-Z Serve Convenience Stores, Inc.
Before CANNELLA and DALEY, JJ., and BURNS, J. Pro Tem.
CANNELLA, Judge.
Defendant and plaintiff in reconvention, Robert H. Johnson (Johnson), appeals from the granting of a summary judgment in favor of plaintiff and defendants in reconvention, Hamid Susananbadi (Hamid) and E-Z Serve Convenience Stores, Inc. (E-Z Serve). We reverse and remand.
On December 26, 1994, Hamid was employed by E-Z Serve located in Kenner, Louisiana. At approximately 12:45 a.m. Johnson and his minor son, Derek S. Johnson went to the store to purchase gasoline. Finding that the pumps were turned off, Johnson entered the store to ask Hamid to turn on the pump so he could get gasoline. An altercation broke out between the two during which Johnson struck Hamid.
On November 17, 1995, Hamid filed a suit against Johnson alleging that Johnson entered the store, began swearing and cursing at him and then, without cause or provocation, attacked and viciously stuck him, thereby injuring him. On December 21, 1995, Johnson answered the petition and filed a verified reconventional demand on his behalf and on behalf of his minor son against Hamid and E-Z Serve. Johnson seeks damages for mental distress arising from the incident, claiming that Hamid swore, cursed and threatened him when he entered the store and then followed him to his car, beat on his car, cursed and threatened him and his son, then followed him from the store all the way to Johnson's home some blocks away continuing to curse, threaten and beat on the car whenever he would stop.
On March 27, 1996, E-Z Serve and Hamid filed for summary judgment on Johnson's reconventional demand. No affidavits were submitted. However, E-Z Serve attempted to support the motion with a video tape taken at the store. Johnson opposed the motion. A hearing was held on May 30, 1996, during which Johnson opposed the use of the video tape because it was not verified nor did it show a complete view of the incident. After the hearing, the trial judge continued the matter in order to allow E-Z Serve and Hamid an opportunity to supplement the motion with affidavits.
*888 On June 13, 1996, E-Z Serve and Hamid filed a supplemental memorandum to support its motion and attached an affidavit by Hamid. On October 1, 1996, Johnson filed a supplemental memorandum in opposition to the motion and attached affidavits by himself, Robert Montz, Thomas W. Goodwin, Jr. and Paul Lococo. A second hearing was held on October 3, 1996. At its conclusion, the trial judge took the matter under advisement. On October 10, 1996 the trial judge granted the summary judgment and dismissed Johnson's reconventional demand. In reasons for judgment, she did not consider the video tape and found that Johnson was the aggressor in the incident.
On appeal, Johnson asserts that the trial judge erred by deciding material facts at issue on a motion for summary judgment, by substituting a motion for summary judgment for a trial on the merits and by continuing the first hearing on the motion for summary judgment when defendants failed to support their motion at that time.
La. C.C.P. art. 966 provides that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations of his pleadings. His response must set forth specific facts showing that there is a genuine issue for trial. La.C.C.P. art. 967; Hard Rock Const., Inc. v. Parish of Jefferson, 96-797 (La.App. 5 Cir. 1/28/97), 688 So.2d 134, 136. Trondsen v. Irish-Italian Parade Committee, 95-28 (La.App. 5 Cir.5/10/95); 656 So.2d 694, 695-96. The 1996 amendment to the article on summary judgments did not change the law, but did change the way that courts view summary judgments. Prior to the 1996 amendment, summary judgments were not favored. La.C.C.P. art. 966 now proclaims that they are favored and the rules should be liberally applied. Hard Rock Const., Inc. v. Parish of Jefferson, 688 So.2d at 136; Oakley v. Thebault, 96-0937 (La.App. 4th Cir. 11/18/96); 684 So.2d 488, 489-91.
The party moving for summary judgment has the burden of proving that no material issue of disputed facts exist. Finkle v. Majik Market, 628 So.2d 259, 262 (La.App. 5 Cir.1993). A fact is material if its existence or non-existence may be essential to the cause of action under the applicable theory of recovery, or if the fact potentially insures or precludes recovery, affects the ultimate success of plaintiff or determines the outcome of the legal dispute. Id. at 262; Dearie v. Ford Motor Co., 583 So.2d 28, 30 (La.App. 5th Cir.1991). However, the mere belief that the litigant will not prevail on the merits is not sufficient to warrant a summary judgment and thus deprive the party of a trial on the merits. Finkle v. Majik Market, 628 So.2d at 262.
Once the moving party has supported its motion, the opposing party may not rest merely on allegations or denials contained in the pleadings, but must provide opposing affidavits or other documentation which show that there are genuine issues of material fact. Williams v. Markel Lumber Co., 566 So.2d 446 (La.App. 4th Cir.1990). However, in order for the court to grant a summary judgment, the record as a whole must show that all critical elements of opposing party's case have been set to rest, regardless of whether the opposing party has failed to file counter-affidavits. Finkle v. Majik Market, 628 So.2d at 262.
Tort liability in Louisiana is based on La. C.C. art. 2315. However, Louisiana has an aggressor doctrine, which precludes tort recovery when plaintiff acts in such a way as to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor plaintiff, unless the person retaliating has used excessive force to repel the aggression. Baugh v. Redmond, 565 So.2d 953, 958 (La.App.2d Cir. 1990); Perkins v. Certa, 469 So.2d 359, 361 (La.App. 2d Cir.1985). The question of which party is the aggressor must be decided on the peculiar facts and circumstances of each situation. Perkins v. Certa, 469 So.2d at 361.
*889 Even when another party is the initial aggressor, the victim may use only so much force as is reasonably necessary to repel the attack and if the victim goes beyond that point, he is liable for damages. In determining the amount of force which is justified in repelling an attack, all facts and circumstances at the scene of the incident must be considered. Red v. Taravella, 530 So.2d 1186, 1190 (La.App. 2d Cir.1988).
In this case, the parties submitted affidavits. In Hamid's affidavit, he contends that on the date in question,
2. On December 26, 1994 at approximately 12:45 a.m., Robert H. Johnson entered the store and began cursing at me because the outside gas pumps were not turned on;
3. Robert H. Johnson, without cause or provocation, attacked and physically struck me on several occasions;
4. At no time did I attack or strike Mr. Johnson;
5 After Robert H. Johnson left the store, I followed him for the sole purpose of getting his license plate number;
6. After leaving the store, I was able to obtain the license plate number....
Robert Johnson's affidavit states, in part, that:
I have been a regular patron of the E-Z store ... for about 20 years ... On December 25, 1994 at approximately 11: 20 p.m. I went to the E-Z store mentioned above to purchase gasoline. Upon arriving at the store I got out to pump some gas. I then turn the pump on standing in full view of the store. I saw the clerk, Mr. Susananbadi look out the window right at me, but he would not turn on the pump. I remained at the pumps for about 10 minutes attempting to get the pumps turned on. During this time, Mr. Susananbadi was watching me from the window, but refusing to turn on the pump.
I entered the store to find out why the pump was not turned on. Only after Mr. Susananbadi verbally attacked me with "fuck you and fuck your mother, I'll kill you" several times did I strike him.
I then left the store and Mr. Susananbadi followed me out, cursing and saying "I'll kill you". I got into my car and was driving away when Mr. Susananbadi started beating on the trunk of my car. I stopped by the pumps and got out. Mr. Susanandabi (sic) then started yelling "fuck you, you coward, I'll kill you".
Mr. Susananbadi's attack continued for about a 30 minute period from the pumps into the parking area and down Kentucky Avenue, all the way to my residence.
Robert Montz's affidavit, submitted by Johnson, states that he was on his way to the store when he heard yelling. As he turned towards Kentucky Avenue he saw Hamid beating on Johnson's car. He states that Johnson,
... stopped his car at the edge of the parking lot and got out. At this point, Mr. Susananbadi headed away from Mr. Johnson's car yelling "fuck you, you coward". Mr. Johnson replied "If I'm a coward why are you running away." Mr. Johnson then got back in his car as did his son and started to slowly drive up Kentucky. I saw Mr. Susananbadi go toward Mr. Johnson's car in a hurry. I then rushed back to home to see what and if anything else happened.
As I came from the side of my house, I saw Mr. Johnson's car stop again under the light in front of my house. Mr. Johnson was behind his car. I heard Mr. Johnson asking what Mr. Susananbadi's problem was. Mr. Johnson's son was standing on the passenger side of the car. Mr. Susananbadi was again cursing Mr. Johnson and his son, yelling "fuck you, you coward, you can't catch me because I play soccor (sic) and your (sic) too fat".
Mr. Johnson then got back in his car as did his son. As they were driving towards their house, I witnessed Mr. Susananbadi run up behind Mr. Johnson's car and start beating on it again. Mr. Johnson stopped his car at the corner of Cambridge and Kentucky Avenue. He and his son got out of his car. Mr. Susananbadi then started heading away from Mr. Johnson's car onto the sidewalk in front of my house. Mr. Susananbadi stopped in front of my drive *890 way on the side walk. The whole time Mr. Susananbadi was yelling "fuck you, you coward" as Mr. Johnson walked towards him. Mr. Johnson stopped where my neighbor's property and mine meet. Mr. Johnson then stated "Why don't you stop running and face me if I'm a coward." Mr. Susananbadi then stated "Don't worry you and him will get yours" as he pointed to Mr. Johnson's son. Mr. Johnson then asked what he was going to do, call the police. Mr. Susananbabi (sic) said no. Mr. Johnson said what then. Mr. Susanababi (sic) replied "You won't like it and you will get hurt, both of you". He was pointing to Mr. Johnson's son. At this point Mr. Susananbabi (sic) ran off towards the store. Mr. Johnson returned to his car and parked it at his home.
The other portion of Johnson's affidavit and the affidavits of Thomas Goodwin and Paul Lococo involved the location of three cameras in the store, in response to Hamid's attempt to use the video tape in support of the motion. Since the trial judge did not consider the video, we do not address whether the video is proper evidence in a motion for summary judgment.
In the initial encounter, the pleadings and affidavits show that Johnson struck Hamid because of his words, not in self-defense or from legal provocation. However, the summary judgment was aimed at Johnson's and his minor son's damages for emotional distress due to Hamid's actions. According to Johnson, when he withdrew from the altercation by leaving the store, he was pursued, harassed and threatened by Hamid for some time until he arrived home. Once he left the scene, he was no longer the aggressor in relation to his own damages. If Hamid pursued, harassed and threatened Johnson and his minor son, who had sought to withdraw from the scene, then Hamid might have become the aggressor and the aggressor doctrine may no longer apply to Johnson to preclude his possible recovery. In addition, Hamid claims that he followed Johnson only to get his license, but since this is contradicted by Johnson and Robert Montz, there is a material fact in dispute. Thus, we find that the trial judge erred in granting the summary judgment. In addition, the minor child, Derek, was not a party to the altercation, but allegedly suffered damages from Hamid's conduct. Even if the summary judgement had been properly rendered against Johnson, it was erroneously rendered against his minor son. If Johnson's reconventional demand turns out to be frivolous, the trial court is empowered to impose sanctions and assess costs against Johnson. Thus, we reverse the summary judgment, and remand the case to the trial court for further proceedings.
Accordingly, the summary judgment is hereby reversed. The case is remanded to the trial court for further proceedings.
Appellee is to pay costs of this appeal.
REVERSED AND REMANDED.