525 So.2d 125 (1988)
J.L. MORRIS, Et Ux, Plaintiffs-Appellees,
v.
HIGHLANDS INSURANCE COMPANY, Defendant-Appellant.
No. 87-130.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*126 Darrel D. Ryland, Marksville, for plaintiffs-appellees.
Gist, Methvin, Hughes & Munsterman, H.B. Gist III, Alexandria, for defendant-appellant.
Before FORET and DOUCET, JJ., and SWIFT[*], J. Pro Tem.
FORET, Judge.
Plaintiffs, J.L. Morris and Cindy Morris, filed a personal injury action against Highlands Insurance Company, asking for damages arising out of an automobile accident involving Cindy Morris on July 3, 1985. Liability was stipulated and the case was tried on October 30, 1986 as a non-jury fixing. At the close of the evidence, the trial court rendered judgment in favor of Cindy Morris in the sum of $99,130 and in favor of J.L. Morris in the sum of $10,000. Defendant appeals.

FACTS
Plaintiff, Cindy Morris, was injured on July 3, 1985, when the pickup truck she was driving was struck by a pickup truck driven by Charles W. Granger, Jr. and owned by his employer, T.L. James & Company. Highlands Insurance Company is the liability insurer of the Granger vehicle. Immediately after the accident, plaintiff did not feel she was seriously injured so she did not consult a doctor. However, shortly thereafter, plaintiff began experiencing pain in her chest, lower abdomen, back and legs, and she therefore went to see Dr. F.P. Bordelon, her family physician, on July 8, 1985. Plaintiff states that she complained of pain in her chest and low back and that Dr. Bordelon recommended that x-rays be taken although none were taken on this occasion. Plaintiff then consulted Dr. Predrag *127 Gagic, a general surgeon, on July 10, 1985, complaining of pain around the abdomen, as well as pain in the mid to uppper area of the back. She returned to Dr. Gagic on July 12, and was thereafter hospitalized by Dr. Gagic for tests at Humana Hospital on July 16, 1985. The tests conducted by Dr. Gagic ruled out the possibility of internal injury and plaintiff did not return to see Dr. Gagic for further treatment nor did he prescribe any medication other than Librax, which was prescribed for irritable bowel syndrome. Following her hospital confinement, plaintiff's attorney arranged for her to see Dr. Bruce Razza, an orthopedic surgeon practicing in New Orleans. Plaintiff first saw Dr. Razza on September 10, 1985, and her complaints at that time were pain in the chest and abdomen area, as well as low back pain. She also complained of pain, tingling, and numbness radiating down the right lower extremity. Upon completion of his examination, Dr. Razza diagnosed plaintiff's condition as lumbosacral disc disease with probable right L-5 radiculopathy and trauma exacerbation. In other words, Dr. Razza felt that plaintiff had one or more worn discs in her low back which were aggravated by the automobile accident in question. He prescribed a back brace, exercise, and a non-steroidal anti-inflammatory medication. Plaintiff again saw Dr. Razza on November 5, 1985, January 23, 1986, April 11, 1986, and July 15, 1986, with essentially the same complaints. Because a course of conservative treatment was not yielding satisfactory results, Dr. Razza hospitalized plaintiff for further testing on September 8, 1986. These tests confirmed a diagnosis of advanced degenerative disc disease, aggravated by the automobile accident of July 3, 1985. Specifically, Dr. Razza found diffused anular bulging of the discs at L-5 and L-4, which resulted in nerve compression or irritation. Following plaintiff's hospital confinement, plaintiff saw Dr. Razza again on October 10, 1986, at which time she advised that the epidural steroid block performed during her hospital confinement had relieved her leg pain somewhat but that she was still experiencing pain in the back. At this time, Dr. Razza discussed with her the possibility of her undergoing facet blocks, which could substantially alleviate the pain which she was experiencing in her mid-back region. However, as of trial, plaintiff had not undergone such treatment. Based upon his months of examination and treatment, Dr. Razza has assigned to plaintiff a 15% permanent physical impairment rating with regard to the body as a whole.
It should be noted that plaintiff was also seen by Dr. Jose Garcia Oiler, a neurosurgeon, on September 25, 1986. Dr. Oiler's diagnosis of injury substantially conforms with that of Dr. Razza. He diagnosed plaintiff's condition as nerve compression caused by one or more bulging discs. According to Dr. Oiler the discs are bulging due to ligament damage within the discs caused by the accident in question.
The following issues are presented for our consideration on appeal:
(1) Is the trial court's award of general damages in the amount of $50,000 an abuse of discretion?
(2) Is the trial court's award of future medical expenses in the amount of $8,500 an abuse of discretion?
(3) Is the trial court's award for past medical expenses in the amount of $12,473 an abuse of discretion insofar as such award includes the full amount of Dr. Oiler's bill, totaling the sum of $1932?
(4) Is the trial court's award of $24,696 for economic loss an abuse of discretion?
(5) Is the trial court's award of $3,461 to Cindy Morris for loss of household services together with an additional award of $10,000 to her husband, J.L. Morris, for loss of consortium erroneous and/or an abuse of discretion?

AWARD OF GENERAL DAMAGES IN THE AMOUNT OF $50,000
[1] Plaintiffs, J.L. Morris and Cindy Morris, testified at length at trial concerning the dramatic effect which Mrs. Morris' injuries have had on her day-to-day activities. This testimony is corroborated by the testimony of Cindy Morris' niece, Agnes Paul, who has visited Cindy on a regular *128 basis for the past several years. Prior to the accident, plaintiff had suffered no back problems other than occasional soreness and mild flare-ups of her arthritic condition. She actively participated in the family business activities which included a farming operation until 1979. Since that time, plaintiff has assisted in the commercial fishing business, loading fish and helping pull up fish nets while working in the boat. Plaintiffs also had approximately seventy pecan trees which they harvested on an annual basis and again, plaintiff was frequently involved in this activity. Because of the accident and her resulting disability, plaintiff has had to drastically curtail her physical activities. Her participation in the fishing and pecan operations has been considerably reduced and she is unable to perform some of her house cleaning work, which has made it necessary for her to seek the assistance of family and friends and sometimes hire someone to handle these chores. Additionally, plaintiff experiences severe discomfort while driving her automobile which often makes it necessary for her to pull over when driving distances of greater than thirty miles. This poses somewhat of a problem because plaintiff sometimes drove fish to market in Simmesport for her husband, which is well over thirty miles from plaintiff's home. As of the date of trial, plaintiff continued to experience back pain, as well as pain in her right leg and was still taking medication prescribed by Dr. Razza. In Sherlock v. Berry, 487 So.2d 555 (La.App. 4 Cir.1986), an award of general damages in the amount of $55,000 was affirmed on appeal for a 59-year-old truck driver who suffered from an aggravation of a pre-existing arthritic condition and possible herniated disc. In Coffil v. New Orleans Public Service, Inc., 453 So.2d 1226 (La.App. 4 Cir.1984), the plaintiff was found to have abnormal bulging of the discs at L4-S and L5-S1 with arthritic changes or overgrowth and, hypertrophy of the facet joints. The diagnosis was lumbar irritation or neuralgia secondary to lumbar spondylosis or degenerative bulging disc aggravated by the injury in question. Conservative treatment was prescribed and surgery was not considered necessary as of the trial date. The court of appeal reduced a general damage award from $97,600[1] to $75,000, finding that an award of general damages in the amount of $75,000 was reasonable and supported by the evidence.
Considering these cases, as well as the above recited facts, we. feel that an award of general damages in the amount of $50,000 to plaintiff, Cindy Morris, does not constitute an abuse of discretion and is therefore affirmed by this Court.

AWARD OF $8,500 for FUTURE MEDICAL EXPENSES
The trial court's award of $8,500 for future medical expenses is excessive. Plaintiff's treating physician, Dr. Bruce Razza, testified that he does not recommend surgery at this time. Additionally, he does not recommend that plaintiff undergo a myelogram nor does he plan to refer her to any other specialist. In order to recover future medical expenses, the evidence must establish that it is more probable than not that such medical treatment will be undertaken. Coffil v. New Orleans Public Service, Inc., supra. It has not been established, by a preponderance of the evidence, that plaintiff will require surgery nor has it been shown that plaintiff will require hospitalization for any extended period of time in the future. It does appear that Cindy Morris will continue to see Dr. Razza periodically. However, nothing beyond this has been shown by a preponderance of the evidence. Accordingly, we feel that an award of future medical expenses in the amount of $8,500 constitutes an abuse of the trial court's discretion and we reduce this award to the sum of $1,700, the highest amount which the trial court could have reasonably awarded in this case.

PAST MEDICAL EXPENSES, INCLUING MEDICAL BILL OF DR. JOSE GARCIA OLLER
The trial court rendered judgment for past medical expenses in the amount of *129 $12,473, which figure includes the amount of $1,932 incurred on behalf of Dr. Jose Garcia Oiler. Defendant strenuously contests any liability for Dr. Oiler's charge. We agree with defendant and will disallow that award by the trial court. It is obvious that this bill was incurred solely in preparation of litigation. Dr. Oiler examined plaintiff on September 25, 1986; the trial date was October 30, 1986. He examined plaintiff only that once, at the request of her attorney; he prescribed no treatment, recommended no surgery and, in effect, saw plaintiff only for the purposes of this litigation. Under those circumstances, this is not a proper medical expense which is chargeable to the defendant. In fact, it was purely for the purpose of evaluating plaintiffs condition in preparation for trial rather than for treatment. See Veuleman v. Sims, 382 So.2d 245 (La.App. 3 Cir.1980). Accordingly, the award for past medical expenses shall be reduced from $12,473 to $10,541.

AWARD OF $24,696 FOR ECONOMIC LOSS
[5-7] Plaintiffs retired from farming in 1979 and have engaged in commercial fishing since that time. They also care for and harvest approximately seventy pecan trees. The evidence concerning Cindy's involvement in these activities is speculative at best. No ledger sheets, payroll records, or other documentary evidence have been provided to document the time or work performed by Cindy Morris in either of these activities nor was there any testimony which established the time or extent of her involvement with any degree of certainty. It is established that since 1981 Cindy Morris has devoted a substantial amount of her time caring for her mother-in-law and her mother-in-law's husband and she therefore only assisted in the fishing operations when Mr. Morris was shorthanded. Beyond this, no evidence was adduced at trial indicating the amount of time which plaintiff worked in the fishing business. The same holds true for the pecan operation. It was established that plaintiff did assist in the caring for and harvesting of the pecan trees, but the evidence falls far short of establishing the approximate time which plaintiff devoted to such activities. Additionally, no evidence was introduced at trial tending to establish the cost of additional labor hired by J.L. Morris to replace his wife in either of these business ventures. Where the time devoted by the spouse in the business activity is documented, as well as the cost of replacing the spouse in such business activity, an award for economic loss is in order. Deville v. K-Mart Corporation, 498 So.2d 1122 (La.App. 3 Cir.1986). This case is clearly distinguishable from the facts of Deville, in which case the plaintiffs (husband and wife) established that the wife worked thirty hours per week in a convenience store operated by plaintiffs. The court therefore allowed recovery for the documented cost of replacing the wife in this business activity. No such evidence was adduced in reference to the claim made by Mr. and Mrs. Morris in this case. Past work history is of extreme importance when calculating the amount due for economic loss or loss of income. Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2 Cir.1987), writ denied, 508 So.2d 827 (La.1987). The trial court's award of damages for economic loss constitutes an abuse of discretion in that it was not adequately proven that any such loss has or will occur.

AWARD OF $10,000 FOR LOSS OF COSORTIUM and AWARD OF $3,461 FOR LOSS OF HOUSEHOLD SERVICES
Appellant contends that the trial court should not have awarded Cindy Morris the sum of $3,461 for loss of household services while, at the same time, awarding her husband the sum of $10,000 for loss of consortium. In Deville v. K-Mart Corp., supra, this Court held that recovery for loss of household services (or cost of maid service resulting from wife's inability to perform household chores) is a separate element of damages and is therefore not to be included within an award for loss of consortium. We therefore must examine each of these awards separately in order to determine whether or not the trial court has abused its much discretion in this case. *130 The award for maid services totaling the sum of $3,461 is clearly supported by the evidence in this case. Cindy Morris is unable to perform many of her household chores and it has therefore been necessary for her to hire a maid on a monthly basis. The need for a maid will likely increase in the future. Family and friends have assisted Mrs. Morris in the performance of her household chores and one cannot expect that this will continue indefinitely. Plaintiff's economist, Dr. Warren Duggar, testified that the estimated cost of past and future maid services, projected over Mrs. Morris' work life expectancy, is the sum of $13,846. Thus, the award made by the trial court is for less than Dr. Duggar's estimation for past and future loss of household services. We find the trial court's award to be reasonable and well supported by the evidence and, accordingly, affirm such award. We should note that appellant argues in its brief that a separate award for loss of household services cannot be made because this item of damages was not contained in the petition filed by plaintiffs. However, the record will clearly reflect that, appellant made no objection to the introduction of such evidence and therefore the trial court acted properly in making such an award in this case.
As for the trial court's award to J.L. Morris of $10,000 for loss of consortium, it was established at trial that Cindy Morris' physical infirmities have put a strain on the marriage. Accordingly, we do not feel an award of $10,000 to J.L. Morris for loss of consortium constitutes an abuse of the trial court's discretion, and we therefore affirm this award.
For the foregoing reasons, the judgment of the trial court will be recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Cinderella Morris in the amount of $50,000 for general damages;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Cinderella Morris for the amount of $15,702 (which is for $1,700 future medical expenses, $10,541 past medical expenses, and $3,461 for maid services);
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of J.L. Morris in the amount of $10,000 for loss of consortium as a result of the injuries sustained by his wife;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that costs of this appeal are assessed one-half to Highlands Insurance Company, defendant-appellant and one-half to J.L. Morris and Cinderella Morris.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as a Judge Pro Tempore.
[1] The total damage award was $100,000. However, the appellate court concluded that of this amount, the sum of $2,400 was for special damages.