586 So.2d 670 (1991)
Gerald EDDY, Plaintiff-Appellee,
v.
A.L. LITTON, Defendant-Appellant.
No. 22769-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1991.
Rehearing Denied October 24, 1991.
*671 Herman L. Lawson, Mansfield, for defendant-appellant.
Bethard & Davis by James G. Bethard, Coushatta, for plaintiff-appellee.
Before MARVIN, HIGHTOWER and VICTORY, JJ.
MARVIN, Chief Judge.
In this action arising out of a battery and an assault, defendant appeals a judgment, after a remittitur, that awards $19,551 total damages. He contends that the case was improperly tried before a jury, that the $12,000 general damage award is excessive, and that sufficient proof was not presented to support the award for loss of income and profits.
*672 Plaintiff has answered the appeal, seeking to increase the awards. We affirm the awards for general damages and medical expenses and reverse the award for loss of income and profits.

FACTS
On March 1, 1988, James Robert Adams, Jr. and Herbert Gibbs were working on a crude oil heater treater in rural DeSoto Parish. Dink English drove to the site and engaged Adams and Gibbs in conversation. Soon thereafter, Gerald Eddy arrived and joined the conversation.
While these three conversed, A.L. Litton, the owner of the property on each side of the parish road near the heater, arrived in his truck. Exiting and approaching the three, he looked at English and said, "I'm going to whip your ass." Believing Litton was joking, English responded in a like manner. Litton then looked at Eddy and said he would "whip [his] ass, too." Eddy responded: "Come on. Here it is."
Litton obtained a walking cane from his truck and proceeded toward Eddy, who backed away from Litton. When Litton swung the cane at his head, Eddy raised his hand to protect his head while backing up. The cane lacerated and bloodied Eddy's right hand between the thumb and index finger. Litton threatened to "bust the windshield" in Eddy's truck if he did not leave, and then warned Eddy that he had something in his truck that would make Eddy leave. Believing that Litton's truck contained a weapon and that Litton would shoot him, Eddy quickly went to his truck and departed.
Eddy drove to the Coushatta hospital where he saw Dr. Huckabay, who treated Eddy's injured hand. Eddy received six stitches, but did not return to Dr. Huckabay for any further treatment as directed. Eddy's wife, who is a nurse, later removed the stitches.
After a trial by jury, the jury found that A.L. Litton committed a battery and an assault upon Gerald Eddy, awarding him $30,000 for physical pain and suffering for the battery, $10,000 for mental pain and suffering for the assault, $2,500 for public humiliation, $7,500 for lost income and profits, and $51 for medical expenses.
Litton then filed a rule for remittitur and alternatively, for a new trial. The trial court ordered a new trial unless remittitur was entered, reasoning that the jury verdict was excessive, and that a new trial would be warranted unless plaintiff entered a remittitur reforming the verdict to award $12,000 for general damages, while approving the jury's awards of $7,500 for lost income and profits, and $51 for medical expenses.
After plaintiff agreed to a remittitur, the trial court entered the judgment which is appealed.

JURY TRIAL
A jury trial was ordered on Eddy's motion. On March 9, 1989, the trial court fixed the amount of the bond at $3,500, but failed to set a date for posting the bond. Eddy posted the bond on the afternoon of Friday, July 6, 1990, the same day that Litton filed a motion to strike the jury trial for failure to post bond and to meet jurisdictional requirements. The motion was denied by the trial court, and a jury trial was held on Monday, July 9, 1990.
CCP Art. 1734 reads:
[W]hen the case has been set for trial, the court shall fix the amount of the bond to cover all costs related to the trial by jury and shall fix the time for filing the bond.... When the bond has been filed, the clerk of court shall order the jury commission to draw a sufficient number of jurors to try and determine the cause....
Litton argues that the trial court should not have allowed a jury trial because the bond was not posted before the drawing of the jury venire. Eddy contends the bond was timely posted because it was filed before trial and the order fixing the amount of the bond did not also fix a date for posting the bond.
Under these circumstances, we must find that Litton cannot now seek review of the trial court's ruling denying his motion to *673 strike the jury trial. We need not decide whether Eddy was entitled to a jury trial.
If the error as to disposition of a jury trial request is of such magnitude that it would warrant reversing the case on this sole ground, the interlocutory judgment under which the error was committed caused irreparable injury at the time it was rendered and therefore would have constituted an appealable interlocutory judgment at that time. American Bank & Trust Co. v. TIL, 340 So.2d 636 (La.App. 2d Cir.1976), writ denied.
A litigant in a civil case, who, absent compelling circumstances, fails to immediately appeal or seek supervisory writs from the trial court's disposition of a request for jury trial, will be deemed to have waived the right to appeal that issue after a trial on the merits. Windham v. Security Ins. Co. of Hartford, 337 So.2d 577, 579 (La.App. 4th Cir.1976), writ denied; Dept. of Transp. & Dev. v. Williamson, 557 So.2d 731 (La.App. 2d Cir.1990), writ denied; American Bank and Trust Co. v. TIL, supra.
In Windham, supra, the trial court erroneously ordered a jury trial. As in the present case, after the jury trial and on appeal from the judgment on the merits, defendants-appellants attempted to raise the issue of the erroneous granting of a jury trial. The court said the contention of error came "too late ..."
In the interest of judicial economy and fairness, we cannot allow the appellant to abide by the judgment dismissing the motion, try the case to the jury and then, after an adverse verdict and judgment, complain it should not have been tried to a jury. If the bank wished to complain about the ruling allowing jury trial, it should have done so prior to trial either by appeal or by an application for writs. Accordingly, we hold appellant has either acquiesced in that ruling or has effectively waived its right to so complain. 337 So.2d at p. 579.
In the present case, after the trial court denied Litton's Motion to Strike Jury Trial, Litton did not appeal or seek supervisory review. Rather, he tacitly acquiesced in the court's ruling by proceeding to trial before a jury.
Under these circumstances, we shall not find error in the ruling denying the motion to strike the jury trial.

QUANTUM
After determining that the jury verdict was excessive, the trial court stated, "[T]he court must grant the highest award that is reasonably within the discretion of the jury." Litton argues that the trial court erred in applying the appellate standard of review. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We note two cases where a trial court applied the appellate standard:
In West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), writ denied, plaintiff sought an additur, or in the alternative, a new trial, after the jury returned a verdict awarding plaintiff $9000 to compensate him for personal injuries. The trial court increased the award to $19,000, the highest award it found the jury could have awarded the plaintiff. Although the appellate court reversed the trial court judgment since it failed to mention a new trial, the court observed,
A jury verdict should not be increased absent a finding that its award is lower than the lowest reasonable amount. And if the court makes such a finding, the award should be raised only to the lowest reasonable amount. Raising the award to the highest reasonable amount is an abuse of discretion. 507 So.2d at p. 1252.
In Rougeau v. Commercial Union Ins. Co., 465 So.2d 178 (La.App. 3d Cir.1985), the trial court found a $750 jury award inadequate. Raising that amount to $2500, the trial court stated that was the lowest award which the jury reasonably could have made. The appellate court found no error in the trial court's use of the appellate standard of review because the appellate court would apply the same standard on appeal to correct an abuse of jury discretion.
Here the trial court, after finding that the jury's general damage award was excessive, *674 entered a remittitur, granting a new trial in the alternative, to reduce that award to $12,000. The court reasoned that it should reduce to the highest award that was reasonably within the jury's discretion. We find no error in the trial court applying the appellate standard.
Defendant further seeks to reduce the general damage award, asserting the "minor" nature of the injury and alleged "mitigating" circumstances. Eddy answered the appeal seeking to increase general damages.
We look to other cases only to determine whether the contested awards are greatly disproportionate to the mass of past awards for truly similar injuries and losses. Reck v. Stevens, 373 So.2d 498 (La.1979); Crow v. Rambin, 569 So.2d 246 (La.App. 2d Cir.1990). We do not disturb an award made by a trial court unless the record clearly reveals and allows articulation of how and why the trial court abused its discretion. Coco v. Winston Industries, Inc., supra.
After Litton struck Eddy with the walking cane in the presence of three of Eddy's friends and then threatened him further harm if Eddy did not leave, Eddy drove away to obtain treatment for his injured hand. Dr. Huckabay gave him a local anesthetic and a tetanus booster shot before placing six stitches in the one-inch cut on Eddy's right hand. Eddy is right-handed. Eddy's injury caused him pain for two or three weeks and, according to Eddy, his hand still has a "little numbness ...". Dr. Huckabay stated the injury would be of two to three weeks duration.
Litton does not dispute the facts we have summarized. He contends that the $12,000 award is abusively high, emphasizing that the injuries that resulted from the hit and from the threat of further harm were minor, that the medical bill was only $51, and Eddy "contributed" to his injury.
Mere words, even though designed to excite or irritate, cannot excuse a battery. However, words which are calculated to provoke and arose to the point of physical retaliation may mitigate damages in a civil action. Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990). The determination and apportionment of fault are factual matters for the trier of fact. We do not disturb conclusions or findings of fact unless they are demonstrably clearly wrong and are not supported by a preponderance of the record. Id.
Litton contends Eddy's damages should be mitigated because their relationship was not cordial and because of Eddy's response (Come on, here it is) to his threat to "whip" Eddy. Litton says he had written two letters warning Eddy to stay off his lands. Eddy and the other men at the heater who testified, said they thought Litton was joking when he threatened to whip, first, English, and then Eddy, and that English and Eddy responded to Litton in a joking manner.
A trial court must balance many factors in assessing damages in assault and battery cases. These include, besides physical pain and suffering, the factors of provocation, reasonableness of force used, attendant humiliating circumstances, sex of the victim, mental distress, etc. There is no rule or standard of law fixing or establishing the amount of recovery. Each case consequently must rest on its own set of facts, with great discretion afforded the trial court to assess general damages. Reck v. Stevens, supra. The several cases cited by each litigant illustrate the necessity for such a principle in cases where injury is intentionally inflicted on another.
We affirmed an award of $500 plus medical expenses of $92.50 in Edwards v. Odom, 486 So.2d 1018 (La.App.2d Cir.1986), noting, however, that Edwards did not show that his injury affected his work. We affirmed an award of $10,000 general damages and $2949 for medical expenses in Gilliam v. Williams, 451 So.2d 681 (La. App. 2d Cir.1984). In Harris v. Doucette, 539 So.2d 997 (La.App. 4th Cir.1989), $8,500 including $310 medical expenses were awarded. Compare the reduction of the award to $10,000 including $842 in medical expenses in Jordan v. Hubbard, 541 So.2d 211 (La.App. 4th Cir.1989).
*675 Here, the jury awarded a total of $50,000 to Eddy in general damages and loss of income. The trial court reduced the general damage award to $12,000 and pronounced judgment for $19,551 which included the loss of income award of $7,500 and medical expenses of $51. The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Some special damages, such as medical and related expenses, cost to repair or replace damaged property, loss of wages, etc., are easily measured. A plaintiff pleading a special damage must produce some evidence by which that loss can be reasonably measured. Proof of a potential special damage or loss does not meet a plaintiff's burden of proof. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985); Johnmeyer v. Creel, 499 So.2d 571, 576 (La.App. 2d Cir.1986).
An award for past lost earnings, which are susceptible of mathematical calculation from documentary proof is not subject to the much discretion rule. Ammons v. St. Paul Fire & Marine Ins. Co., 525 So.2d 60 (La.App. 3d Cir.1988), writ denied 525 So.2d 1045; Young v. South Central Bell Tel. Co., 412 So.2d 147 (La. App. 4th Cir.1982); Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3d Cir. 1988).
Where no documentary evidence such as ledger sheets and payroll records are provided to show the time and extent of an injured plaintiff's commercial endeavor with any degree of certainty, a trial court may not award damages for the economic loss. Morris, supra. See also Talbert v. Ramsey, 349 So.2d 958 (La.App. 1st Cir. 1977).
Eddy worked as an oil field construction contractor, using some heavy equipment and machinery. Eddy testified that for four to six weeks after his hand was injured, he conducted some "everyday business," but otherwise closed his business and did not solicit contracts for new work. He said he knew of several customers for whom he had worked in the past who had work available during the time his business was "closed." Eddy estimated losing a gross amount of $30,000, or a net amount of $7500, during the time he "closed" his contracting business.

CONCLUSION
Under the recited circumstances, we must find the award of $7,500 for past loss of income, based solely on Eddy's testimonial explanation of his loss and without documentary support, to be speculative and in error. We shall amend to reduce the judgment.
We find no abuse of the court's discretion in assessing general damages at $12,000. While Eddy was in a defensive and retreating posture, Litton struck Eddy with the cane, without cause or provocation before three of Eddy's friends, and caused Eddy to flee by threatening to further injure him. Eddy experienced embarrassment and humiliation as well as physical pain and suffering.
A lesser award within the discretion of the trier of fact and more pleasing to Litton, of course, might have been made. The $12,000 award by the trial court is within the bounds of reasonable discretion and will be affirmed.

DECREE
We hereby amend to reduce the judgment in favor of Eddy from $19,551 to $12,051. In all other respects, the judgment is affirmed. Cost of the appeal is assessed one-half to Eddy and one-half to Litton.
AMENDED and AFFIRMED.
VICTORY, J., concurs in part, dissents in part with written reasons.
VICTORY, Judge, concurring in part, dissenting in part.
I agree with that portion of the majority opinion that reverses the award for past loss of income due to lack of sufficient proof. However, I respectfully dissent from the majority's opinions in two areas:
(1) The plaintiff asked for a jury trial shortly after suit was filed and obtained a *676 judicial order setting the amount of the jury bond. When the case was later set for trial by court order at the plaintiff's request, he failed to have the trial judge fix the time for filing the jury bond as required by C.C.P. Article 1734 A. The Friday before the Monday trial, the defense filed to strike the jury trial for failure to post the bond. About two hours later the bond was filed with the court. Argument on the defense motion to strike the jury trial was not held until 1:30 p.m. on Monday. Jury selection was already completed when the motion was argued and denied by the trial judge. Evidence was immediately taken, the case argued, and a jury verdict rendered a few hours later. Under these circumstances, I am of the opinion that the defense had no practical opportunity to apply for relief from the trial court's ruling on the jury trial issue and the cases cited by the majority should not be controlling.
Further, Article 1734 A clearly contemplates the deadline for the filing of the jury bond must be at least ten days in advance of trial in order to allow the non-moving party who desires a jury trial to post the bond if the moving party has failed to do so. In this case, the plaintiff, who asked for the jury trial, had the responsibility to obtain a judicial fixing of the time for filing the bond. Since he failed to obtain the judicial order fixing the time to file the jury bond mandated by Article 1734 A, the filing of the bond on Friday before a Monday trial came too late, and the trial court should have granted the defense motion to strike the jury trial.
(2) On the issue of general damages, I dissent from the majority opinion which affirms $12,000 in general damages award to the plaintiff. Plaintiff suffered a one-inch cut on his right hand which healed in two to three weeks and required six stitches. Total medical expenses were $51.00. During the assault and battery, the plaintiff was hurt and threatened by the defendant in front of his friends, causing some public humiliation; however, the evidence on this issue shows the damage was minimal.
The three cases cited by the majority on the issue of damages, do not, in my opinion, support the majority's position. In Edwards v. Odom, supra, a panel of this court refused to raise a $500 general damage award, plus $92.50 medical expenses, where the plaintiff, battered by the defendant, suffered a cut on his scalp requiring four stitches.
In Gilliam v. Williams, supra, a $10,000 award was affirmed by the court for a plaintiff who was battered and left with an "obvious deformity" and loss of mobility in a finger. The plaintiff in Gilliam had undergone corrective surgery and physical therapy, but was still routinely experiencing pain after eight months. The pain and deformity deprived the plaintiff of his hobby of building ham radio sets and of performing small repair jobs around his house.
In Harris v. Doucette, supra, the Fourth Circuit affirmed an award of $8,500 for a plaintiff who was cut with a knife on his face, head, and thumb. The disability to his thumb, thought to be permanent, interferred with his ability to perform his trade as a carpenter.
In my view, the jury award of $2,500 for public humiliation was reasonable and should be affirmed, but the remainder of the general damage award appears to punish the defendant for his reprehensible conduct, not merely compensate the victim for his damages. The trial judge cut the total general damage award to $12,000. I would cut it to $5,000 total, including the $2,500 for public humiliation.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, VICTORY, BROWN and STEWART, JJ.
Rehearing denied.