NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1489


BILL BURNS MARTIN

VERSUS

D & S MARINE SERVICE, L.L.C.


**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18356
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


Saunders, J., dissents and assigns written reasons.


AFFIRMED.


John R. Pohorelsky
Peter J. Pohorelsky
Scofield, Gerard, Singletary,
   & Pohorelsky
Post Office Drawer 3028
Lake Charles, Louisiana 70602
(337) 433-9436
Counsel for Plaintiff/Appellant:
   Bill Burns Martin

**Jefferson R. Tillery**
**Jean-Paul A. Escudier**
**Jones, Walker, Waechter, Poitevent**
**Carrère & Denègre, L.L.P.**
**201 St. Charles Avenue – 48th Floor**
**New Orleans, Louisiana 70170-5100**
**(504) 582-8616**
**Counsel for Defendant/Appellee:**
**D&S Marine Service, L.L.C.**

**PICKETT, Judge.**

Plaintiff appeals trial court's award for damages caused to his dock and large steel mooring dolphin which resulted when they were struck by a tugboat and two barges owned and/or operated by defendant. For the following reasons, we affirm.

## FACTS

On February 11, 2008, the M/V ANNA MICHAEL, a push tug owned and operated by D&S Marine Service, L.L.C. (D&S), was pushing two barges owned by Kirby Inland Marine (Kirby), when it allided with a dock and steel mooring dolphin situated on the Gulf Intracoastal Waterway in Grand Lake that is owned by Bill Burns Martin. Mr. Martin sued D&S to recover the cost of repairs to his dock and dolphin necessitated by the allision.

The morning of trial, D&S stipulated to liability, and the only issue presented for resolution was damages. Mr. Martin testified and presented the testimony of Captain Anthony Brown, a marine surveyor. D&S presented the deposition testimony of marine surveyor, Harry Stark, and the live testimony of Jeffrey Boudreaux, of B&J, Inc. (B&J), a marine construction company that submitted a bid to repair the damaged dock and dolphin. After taking the matter under advisement, the trial court awarded Mr. Martin $30,478.42. Mr. Martin appealed.

## ASSIGNMENTS OF ERROR

Mr. Martin assigns four errors with the trial court's judgment:

(1) The trial court erred when it relied upon two incomplete and inaccurate bids for repair in calculating damages;

(2) The trial court erred when it reduced damages by use of a linear depreciation factor;

(3) The trial court erred in not awarding damages for the cost of removing steel pilings of a mooring dolphin; and

(4) The trial court erred in awarding damages in the amount of $30,478.42 when the evidence and law mandate an award in excess of $200,000.00.

## DISCUSSION

### *Did the trial court err in including incomplete and inaccurate bids for repair in calculating damages?*

Mr. Martin solicited and received three bids for repairing the dock and dolphin. The trial court determined there were problems or issues with each of the three bids and averaged the bids to determine the cost to repair the dock and dolphin. The evidence established that the bid presented by B&J was incomplete and that the bid presented by Bass Builders, L.L.C. (Bass) was also incomplete because Bass did not have the equipment required to perform the repairs and intended to contract the work to B&J, resulting in Bass's bid actually being B&J's bid with a markup. Mr. Stark testified the third bid presented by F. Miller Construction LLC (F. Miller) was "too high" and was "not comparable" to the other bids submitted. He explained that F. Miller's primary business was constructing and repairing large commercial docks and opined that its bid was high because it was not interested in performing small jobs like Mr. Martin's. Mr. Boudreaux also opined that F. Miller's bid was high and that the repairs could be performed for less than the amount quoted in its bid.

Mr. Martin argues the trial court erred in considering B&J's and Bass's bids because they were incomplete and inaccurate. D&S acknowledges that Mr. Boudreaux admitted B&J's bid was incomplete because it did not include all the work to be performed. It argues, however, this error did not render the bids of B&J and Bass invalid because Mr. Boudreaux also testified that B&J would honor its bid and perform all the required work for $61,380.00, the amount it bid, to protect its reputation.

In cases such as this, maritime law, not state law, applies because the cause of action arose under maritime law. *Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300 (5th Cir. 1976). Nevertheless, property damage principles are the same under federal maritime law and Louisiana law: the goal is to restore the victim to the position he was in before his property was damaged. *Id.*; *see also Massie v. Deloach,* 04-1425 (La.App. 3 Cir. 3/2/05), 896 So.2d 1246, *writ denied*, 05-786 (La. 5/6/05), 901 So.2d 1107. Additionally, a defendant can only be held liable for damages that he has been proved to have caused. *Freeport*, 526 F.2d 300. Furthermore, under maritime law, a defendant cannot be held liable for repairs that enhance or extend the useful service life of the damaged property. *Id.* If repairs are not made, damages are measured by the estimated cost of repair at the time the damage occurred. *United States v. Shipowners & Merchants Tugboat Co.*, 103 F.Supp. 152 (N.D.Cal. 1952), *aff'd*, 205 F.2d 352 (9th Cir 1953), *cert. denied*, 346 U.S. 829, 74 S.Ct. 51 (1953); *see also Kan. City S. Ry. Co. v. Barge HBC 8106*, 642 F.Supp. 609 (W.D.La. 1986). Lastly, a trial court's award of special damages is a finding of fact that cannot be reversed unless there is no reasonable basis for the award and it is clearly wrong. *Menard v. Lafayette Ins. Co.*, 09-1869 (La. 3/16/10), 31 So.3d 996. Repair costs are special damages. *Eddy v. Litton*, 586 So.2d 670 (La.App. 2 Cir. 1991), *writ denied*, 590 So.2d 1203 (La.1992); *see also Bernard v. City of Lafayette*, 98-1815 (La.App. 3 Cir. 5/5/99), 735 So.2d 804.

As the trier of fact, the trial court determined the credibility of the witnesses and had the prerogative of accepting or rejecting some or all of the witnesses' testimony; this included expert witness testimony. *Ryan v. Zurich Amer. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. The trial court's findings of fact, credibility evaluations, and inferences of fact should not be disturbed on appeal if they are reasonable. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990).

Mr. Martin strongly argues that F. Miller's bid is the only valid bid because it includes all the repair work to be performed and Mr. Stark testified it would construct a beautiful dock; therefore, it is the only bid the trial court should have considered. This argument fails to acknowledge that not only did Mr. Boudreaux testify B&J would have performed the work for the amount it originally quoted in its bid, but Mr. Stark testified that F. Miller's bid was high and not competitive, explaining that F. Miller primarily performs commercial work and, more likely than not, submitted the bid as a professional courtesy. Additionally, Mr. Boudreaux also opined the bid was high.

This evidence shows the trial court's determination that there was a problem with each bid was reasonable and that its resolution of the problem of averaging the bids was reasonable as well. Accordingly, we cannot reverse the trial court's calculation of Mr. Martin's damages.

***Did the trial court err in reducing damages by use of a linear depreciation factor?***

The trial court reduced its repair-cost calculation as provided in *Freeport,* 526 F.2d 300, which provides that if repairs enhance or extend the useful service life of the damaged property, the damage award is reduced or depreciated to the extent that the useful service life of the property was extended. The trial court concluded the dock and dolphin had ten years useful service life remaining which the repairs would extend an additional twenty-five years. As provided in *Freeman*, the trial court determined a depreciation factor of 71% had to be applied to its repair-cost calculation. Application of this factor to the repair costs of $105,098 resulted in the trial court's award of $30,478.42 as the cost to restore Mr. Martin's property to its pre-collision condition.

Mr. Martin urges the trial court erred in applying a linear depreciation factor where the evidence shows that the property was not deteriorating at a linear rate. He cites *Pillsbury Co. v. Midland Enters., Inc.*, 715 F.Supp. 738 (E.D. La. 1989),

4

*aff'd and remanded,* 904 F.2d 317 (5th Cir. 1990), *cert. denied*, 498 U.S. 983, 111 S.Ct. 515 (1990), as support for this argument. Mr. Martin is correct that straight-line depreciation is not applicable in all instances, but he has not shown it is not applicable here.

Mr. Stark testified the dock and dolphin were at least thirty years old and had exceeded its useful service life. As argued by Mr. Martin, Capt. Brown was of the opinion that before the allision, the dock and dolphin had ten years useful service life remaining, which is what the trial court found. Capt. Brown did not, however, give an opinion as the age of the dock or dolphin. The only evidence other than Mr. Stark's and Capt. Brown's opinions on this issue is more than thirty photographs of the dock and dolphin that were introduced into evidence. The photographs do not show that the trial court's apparent acceptance of Mr. Stark's opinion over Capt. Brown's opinion is clearly wrong. Accordingly, we cannot disturb this conclusion.

### *Did the trial court err in not awarding damages for the cost of removing steel pilings of a mooring dolphin?*

Mr. Martin next argues the trial court erred in not awarding damages for removal of the dolphin pilings. He urges that Mr. Stark's testimony was unreliable because it showed his inspections of the dock and the dolphin were merely cursory as compared to Capt. Brown's inspections which were much more in depth.

Capt. Brown testified that he "neglected" to include costs for removing and replacing the dolphin pilings because he "assumed that the dolphin had been laid over" and was not broken at the mud line. Referencing Mr. Stark's survey, counsel for Mr. Martin asked if Mr. Stark "suggested that perhaps the dolphin did break at the mud line." Capt. Brown agreed that it did, and counsel continued, "If that was true . . . what impact would that have on the cost of repairing?" Capt. Brown responded, "That would increase it significantly," and explained that he performed a

5

"tapping" test on the one of the piles which led him to conclude, "there is -- it's fair -- reasonable to expect that -- that pipe was broken." He then explained that any piles that extended above the mud should be removed because they presented potential liability to the plaintiff. Capt. Brown reviewed what removal of the pilings would entail and estimated the cost would be approximately $100,000.00.

The trial court did not address Mr. Martin's claim for the cost of removing pilings; therefore, it is presumed the claim was denied. *M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 07-2371 (La. 7/1/08), 998 So.2d 16. Having considered the testimony of Mr. Stark and Capt. Brown, we find no error with the trial court's rejection of this claim. Although Mr. Stark's stated in his survey "the dolphin was *apparently* broken at the mud line," he and Capt. Brown both testified that without removing the dolphin from the water they could not determine if the pilings were broken or if there were pilings that were submerged in the mud that needed to be removed. (Emphasis added.) Importantly, Capt. Brown testified that the tapping test he performed led him to "reasonably expect" the pilings were broken; however, he did not call for removal and replacement of the pilings in his survey. Moreover, Capt. Brown acknowledged that in cases such as this, it is customary for landowner's to pay for the removal or excavation of damaged structures to determine the extent of damage, if any, caused by the allision. For these reasons, the trial court could have reasonably concluded that Mr. Martin did not prove the pilings of the dolphin were broken and needed to be replaced, and its conclusion is not manifestly erroneous.

***Did the trial court err in awarding damages in the amount of $30,478.42 when the evidence and law mandate an award in excess of $200,000.00?***

Resolution of the prior assignments of error pretermits the need to address this assignment of error.

6

## DISPOSITION

The judgment of the trial court is affirmed. All costs of this appeal are assessed to Bill Burns Martin.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1489

BILLS BURNS MARTIN

VERSUS

D & S MARINE SERVICE, L.L.C.

**SAUNDERS, Judge, dissents and assigns written reasons.**

I disagree with the majority that the trial court did not err in reducing damages by use of a linear depreciation factor. In *Pillsbury Co. v. Midland Enters., Inc.*, 715 F.Supp. 738, 765, cited by the majority, the United States District Court for the Eastern District of Louisiana, after an extensive review of accounting principles, concluded:

> While a linear, or straight line, depreciation method is most commonly used for property with a fixed life span, this method is not to be applied where evidence establishes that the original property had been deteriorating at a nonlinear rate. Similarly, if there is no evidence of any deterioration prior to the casualty, then no deduction is made for depreciation.

After a review of the evidence submitted, in my view Mr. Martin established that his property had not been deteriorating at a nonlinear rate. Thus, I feel that the trial court was erroneous in reducing his recovery for the damage done to his dock and dolphin, and I disagree with the majority that Mr. Martin did not show that such straight line depreciation is not applicable. The result reached by both the trial court and majority fails to fully indemnify Mr. Martin for the damage done to his property. Thus, I respectfully dissent.