783 So.2d 505 (2001)
Desiree BLACK,
v.
AVONDALE INDUSTRIES, INC., et al.
No. 00-CA-1511.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
*506 Hugh P. Lambert, Linda J. Nelson, Lambert & Nelson, New Orleans, LA, Attorneys for Plaintiff/Appellant.
Robert L. Bonnaffons, Robert Markle, Stefini Weckwerth Salles, Adams and Reese, New Orleans, LA, Attorneys for Defendant/Appellee, Avondale Industries, Inc.
Panel composed of Judges GOTHARD, CHEHARDY, and SCHOTT, Pro Tempore.
SOL GOTHARD, Judge.
Plaintiff, Desiree Black, appeals a judgment of the trial court which granted summary judgment in favor of defendant, Avondale Industries (Avondale), and dismissed plaintiff's case as to that one defendant with prejudice. The judgment was certified by the trial court as appealable pursuant to LSA-C.C.P. article 1915 B(1).
On March 18, 1998, plaintiff filed this action for damages sustained while she was employed as a security guard by Wackenhut Corporation (Wackenhut). Plaintiff was injured in the course and scope of her employment in March of 1997, when she was attacked by an intoxicated sailor at Avondale Shipyard. In the petition plaintiff alleged that at the time of the attack, the sailor, Romeo Salac, was a crew-member of the vessel, STOLT SPRAY, which is owned and operated by Stolt-Neilsen, Incorporated (Stolt-Neilsen). Plaintiff sued Romeo Salac, Stolt-Neilsen, Avondale, and the insurers of both Stolt-Neilsen and Avondale. In a supplemental and amending petition, plaintiff substituted Stolt Parcel Tankers, Incorporated for Stolt-Neilsen. In a second supplemental and amending petition, plaintiff added STOLT SPRAY, Incorporated *507 and Stolt-Neilsen Marine Services as defendants.
Avondale filed a third party demand against plaintiff's employer, Wackenhut, and its insurer for indemnification. Wackenhut's insurer, The Insurance Company of the State of Pennsylvania, filed an intervention for indemnification of worker's compensation paid to plaintiff.
Avondale filed a motion for summary judgment in which it argued that it was not vicariously liable for the actions of Romeo Salac. Plaintiff opposed the motion arguing that Avondale, as a property owner, breached its duty to exercise reasonable care for the safety of persons on the premises. After a hearing on the merits of the motion, the trial court rendered judgment in favor of Avondale, dismissing plaintiff's claim against it with prejudice. It is from that ruling that plaintiff appeals.

FACTS
In a deposition, the Chief Mate of the STOLT SPRAY, Frido Josepha, testified that after discharging its load of chemicals, the ship lost rudder. It docked at Avondale for repairs. Because a new rudder had to be manufactured in Holland, the ship was dry docked at Avondale for about two months. During that time the ship's crew did maintenance work on the ship, such as painting, greasing, changing pipes, and overhauling of engines. It was Mr. Josepha's job to assign tasks to the crew members.
Mr. Josepha further testified that during the time the ship was dry docked, the crew lived on the ship. If they went into town, an agency would send a van for transportation. According to Mr. Josepha's testimony, a crew member could not leave the ship during working hours without notifying the chief mate. If a crewmen was off duty, he could go ashore as long as he returned in time for his work shift. Normal working hours while the ship was in dry dock were from eight in the morning until five in the evening, although on some occasions the crew would work longer.
Mr. Josepha stated that he remembered Romeo Salac, who was an ordinary seaman on the ship. Mr. Josepha testified that he had no trouble with Mr. Salac and had never received any complaints about him.
Mr. Josepha testified that Ms. Black was friends with several of the crew members, and had a romantic relationship with one of the fitters who was working on the ship. Mr. Josepha stated that the crew members would often bring Ms. Black food, and she had been on the ship several times.
According to Mr. Josepha's testimony, on the night of the incident which forms the basis of the claim against Avondale, Ms. Black was aboard the vessel in the "crew's day room" where the crew was relaxing and playing music. Mr. Josepha left the vessel to use the telephone on the dock. When he completed his calls, Mr. Josepha began walking back to the ship. He passed the guard house where Ms. Black was normally stationed. She was there with the person assigned to relieve her at the end of her shift. Ms. Black told Mr. Josepha that Mr. Salac hit her when she refused to allow him to use the phone because he was drunk. After Mr. Josepha spoke with police investigating the incident, he went to find Mr. Salac who was in his cabin, asleep.
Ms. Black's testimony contained in her deposition is that she was hired as a security guard and trained by Wackenhut in March, 1997. Her first assignment was to guard the STOLT SPRAY at Avondale on the 3 p.m. to 11 p.m. shift. Ms. Black explained that she was employed with Wackenhut as a security guard, but assigned to Avondale. While on duty at Avondale, Ms. Black reported to Avondale *508 supervisors and used Avondale's radios and guard house.
She was working in that capacity about two weeks later on the night of the incident with Mr. Salac. On that evening, Ms. Black denies going on board the ship. She testified that her only contact with crew members on the ship was when they came down to use the pay phone which was near the guard house. She stated that she was stationed in the guard house near the ship. She was in contact with her supervisor, and other security guards by radio.
Ms. Black testified that Mr. Salac came down to the guard house and asked to use the phone. Ms. Black told him someone else was using it and he would have to wait. According to Ms. Black's testimony, Mr. Salac became angry and began "swinging" at Ms. Black. Ms. Black backed away, but Mr. Salac continued his aggressive behavior, insisting that he be allowed to use the phone immediately. Mr. Salac struck Ms. Black in the head and she fell backwards over a pipe. Mr. Salac hit Ms. Black in the right eye and cheek, and she hit the back of her head when she fell on the pipe. Ms. Black maintains that Mr. Salac continued to hit her after she had fallen.
Mr. Black stated that she has seen Mr. Salac on previous occasions when he asked to use the phone, but this was the first time his behavior was threatening. On the evening of the incident, Mr. Salac had a can of beer in his hand when he approached the guard house, and appeared to be intoxicated. Before he began striking Ms. Black he "started gagging and throwing up".

LAW
The judgment before this court for review is the grant of a summary judgment in favor of Avondale which dismisses plaintiff's claims against Avondale with prejudice.
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Summary judgments are now favored in the law and the rules should be liberally applied. Susananbadi v. Johnson, 97-91 (La.App. 5 Cir. 9/17/97), 700 So.2d 886. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. LSA-C.C.P. art. 966; Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
The mover bears the burden of proof. Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. Perricone v. East Jefferson General Hosp., supra. Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; McVay v. Delchamps, Inc., 97-860 (La.App. 5 Cir. 1/14/98), 707 So.2d 90.
In brief to this court, plaintiff argues that the trial court erred in granting summary judgment because Avondale assumed a duty to protect plaintiff, and because material issues of fact remain undecided as to whether Avondale's breach of that duty and negligence caused plaintiff's injury. Plaintiffs theory of liability is based on the duty of a property owner to exercise reasonable care for the safety of persons on the premises. Specifically, plaintiff asserts that Avondale knew or should have known that sailors are "tough individuals" who may consume alcohol to *509 excess. Plaintiff argues that Avondale did not provide Ms. Black with adequate protection by hiring only one security guard for the area, and in not arming her.
Under the duty/risk analysis applicable to all tort actions, the plaintiff bears the burden of proving four elements: (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to the plaintiff; (3) the requisite duty was breached by the defendant; and, (4) the risk of harm was within the scope of the duty breached. Mundy v. Department of Health & Human Resources, 620 So.2d 811 (La.1993). The duty of a land owner to provide for the safety of his invites is recognized in Louisiana jurisprudence. St. Hill v. Tabor, 542 So.2d 499 (La.1989). However, the general duty of an owner or operator of a facility to provide a safe environment for persons on his property does not extend to protection against unforeseeable or unanticipated criminal acts by third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
In Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979), the Supreme Court delineated the general duty of a property owner. The Walker court, at 369 So.2d 1047, stated:
In determining an owner's liability under Civil Code Articles 2315 and 2316 the test has been stated to be whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant's duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. [Citation omitted.]
In the instant case, Avondale contracted with Wackenhut to obtain a professional security guard. Ms. Black was trained and employed by Wackenhut to provide that service. Her minimum experience in that position notwithstanding, we are not persuaded by plaintiff's argument that Avondale should have done more to protect her from the violence of third parties. When the factors set forth in Walker are applied to the facts of this case, we find no duty owed to plaintiff which Avondale breached. Whether a duty is owed is a question of law, not fact. Mundy v. Department of Health and Human Resources, supra 620 So.2d at 813.
For the foregoing reasons, we find Avondale is entitled to a summary judgment as a matter of law, and affirm the trial court judgment which granted summary judgment in favor of Avondale, and dismissed plaintiff's claims as to Avondale.
AFFIRMED.